# Richmond

### COUNTY OF PRINCE WILLIAM, VIRGINIA v. THOMASON PARK, INCORPORATED.

March 5, 1956.

Record No. 4467.

Present, All the Justices.

The opinion states the case.

*Newman, Allaun & Downing* and *Stanley A. Owens,* for the appellant.

*Williams, Mullen, Pollard & Rogers,* for the appellee.

SMITH, J., delivered the opinion of the court.

In 1918, through appropriate proceedings, the United States government acquired the fee simple title to and exclusive jurisdiction over certain land in Prince William county. U. S. Const. Art. I, § 8, Cl. 17; Virginia Acts of Assembly, 1918, c. 382, p. 568. The area so acquired is now known as Marine Corps Schools, Quantico, Virginia. In 1950 a portion of this land was leased to Marineland Park, Incorporated, which, by charter amendment has now become Thomason Park, Incorporated, referred to herein as lessee, for the purpose of constructing and maintaining thereon a housing project for the use of military and civilian personnel assigned to duty or employed at Quantico. The agreement of lease recites that it was entered into by the Navy Department on behalf of the United States under the provisions of the Act of Congress of August 5, 1947 (61 Stat. 774, 34 U.S.C.A. §§ 522a, 522e),[1] and the Act of Congress of

---

[1] The Act of August 5, 1947, which authorizes leasing of Defense Department property, provides in part:

"Whenever the Secretary of War or the Secretary of the Navy shall deem it to be advantageous to the Government he is authorized to lease such real or personal property under the control of his Department as is not surplus to the needs of the Department within the meaning of the Act of October 3, 1944 (58 Stat. 765), and is not for the time required for public use, to such lessee or lessees and upon such terms and conditions as in his judgment will promote the national defense or will be in the public interest. Each such lease shall be for a period not exceeding five years unless the Secretary of the Department concerned shall determine that a longer period will promote the national defense or will be in the public interest. * * * Each such lease shall contain a provision permitting the Secretary of the Department concerned to revoke the lease at any time, unless the Secretary shall determine that the omission of such provision from the lease shall promote the national defense or will be in the public interest. In any event each such lease shall be revocable by the Secretary of the Department concerned during a national emergency declared by the President. * * * The authority herein granted shall not apply to oil, mineral, or phosphate lands." 61 Stat. 774, 34 U.S.C.A. § 522a.

"The lessee's interest, made or created pursuant to the provisions of this Act, shall be made subject to State or local taxation." 61 Stat. 775, 34 U.S.C.A. § 522e.

See the amendment to this Act, Sept. 28, 1951, c. 434, Title VI, § 605, 65 Stat. 366.

August 8, 1949 (63 Stat. 570, 12 U.S.C.A. § 1748),[2] commonly referred to as the Military Leasing Act and the Wherry or National Housing Act respectively.

The lease was executed for a term of 75 years at a nominal rental of $1.00 for the term, with the right of termination by the United States upon the elapse of 39 years. The lease provides, among other things, that upon its expiration or earlier termination all of the improvements and other property required to be furnished by the lessee "shall remain on the leased premises and be the property of the Government without compensation" therefor. Lessee has constructed buildings and furnished the other property required under the provisions of the lease agreement.

Prince William county assessed lessee with real estate taxes in the amount of $2,500 for the year 1952 and $11,925 for each of the years 1953 and 1954. In making these real estate assessments the Commissioner of Revenue of the county assessed only the buildings erected on the leased premises by lessee, but in so doing fixed the assessments at the same valuations that would have been placed thereon if the land had been owned in fee simple by lessee. No attempt was made to assess lessee with a leasehold tax.

After paying under protest the total assessments of $26,350, lessee instituted this proceeding to correct the assessments and to secure a refund of the taxes paid. In its final order the trial court directed, for the reasons stated in its written opinion, that the assessments against Thomason Park be corrected and vacated; that lessee be exonerated from payment of any real estate taxes to Prince William county for the years 1952, 1953 and 1954, and that the county refund to lessee the total amount of taxes paid for the three years in

---

[2] The Act of August 8, 1949, which is concerned primarily with the insuring of mortgages for the construction of military housing, provides in part:

"Whenever the Secretary of the Army, Navy, or Air Force determines that it is desirable to lease real property within the meaning of the Act of August 5, 1947 (61 Stat. 774), to effectuate the purposes of this title, the Secretary concerned is authorized to lease such property under the authority of said Act upon such terms and conditions as in his opinion will best serve the national interest without regard to the limitations imposed by said Act in respect to the term or duration of the lease, and the power vested in the Secretary of the Department concerned to revoke any lease made pursuant to said Act in the event of a national emergency declared by the President shall not apply. * * *" 63 Stat. 576, 12 U.S.C.A. § 1748d.

"Nothing in this title shall be construed to exempt any real property acquired and held by the Commissioner under this title from taxation by any State or political subdivision thereof, to the same extent, according to its value, as other real property is taxed." 63 Stat. 576, 12 U.S.C.A. § 1748f.

See the amendment to this Act, Aug. 11, 1955, c. 783, Title IV, § 401, 69 Stat. 651.

question. To review this order we granted the county of Prince William an appeal.

■ The parties agree that upon ceding to the United States exclusive jurisdiction over the land here involved, Virginia gave up the power to impose the taxes herein assessed. However, the parties disagree as to whether the United States, under the provisions of the Wherry Act and the Military Leasing Act, has consented to the taxation by State and local authorities of its property or the property of private parties located on property of the United States. We shall first examine this disagreement of the parties.

It is a fundamental principle that a state and its subdivisions are without power, in the absence of express consent of Congress, to tax property owned by the United States. Such consent, being in derogation of the sovereign power of the federal government, is found only where Congress has spoken in the clearest language. This principle is clearly enunciated in *United States* v. *Allegheny County*, 322 U. S. 174, 64 S. Ct. 908, 88 L. ed. 1209, which involved a local ad valorem tax on real estate owned by a private company but based in part upon the value of the federal government's machinery that had been rented to the company and bolted on concrete foundations in the company's plant. In holding that the government's property interests are not taxable either to it or its bailee, the court said:

"* * * The trend of recent decisions has been to withdraw private property and profits from the shelter of governmental immunity but without impairing the immunity of the State or the Nation itself. Benefits which a contractor receives from dealings with the Government are subject to state income taxation. Salaries from it may be taxed. The fact that materials are destined to be furnished to the Government does not exempt them from sales taxes imposed on the contractor's vendor. But in all of these cases what we have denied is immunity for the contractor's own property, profits, or purchases. We have not held either that the Government could be taxed or its contractors taxed because property of the Government was in their hands. The distinction between taxation of private interests and taxation of governmental interests, although sometimes difficult to define, is fundamental in application of the immunity doctrine as developed in this country." 64 S. Ct., at page 915.

■ The county contends that under the provisions of the Wherry Act and the Military Leasing Act the United States has consented

not only to the taxation of the interest of the lessee but has also given its consent to taxation of the leased property owned by the United States. In support of its contention, the county cites and relies on: *Meade Heights, Inc.* v. *State Tax Commission,* 202 Md. 20, 95 A. (2d) 280; *Sheridanville, Inc.* v. *Borough of Wrightstown and Fort Dix* v. *Borough of Wrightstown,* (one opinion), 125 Fed. Supp. 743, *aff'd,* one Judge dissenting, 225 F. (2d) 473; *Conley Housing Corp.* v. *Coleman,* 211 Ga. 835, 89 S. E. (2d) 482; *Offutt Housing Co.* v. *County of Sarpy,* 160 Neb. 320, 70 N. W. (2d) 382, *cert. granted,* 350 U. S. 893.

These cases, like the instant case, involve the right of states and localities to tax buildings constructed by a lessee on land owned exclusively by the United States and which were erected pursuant to a lease contract executed under the authority of the Wherry Act and the Military Leasing Act. All of the leases in these cases are for terms of 75 years with provisions for their termination at an earlier date, but the rentals vary from $1.00 for the full term to substantial sums. The most marked difference in the several leases is found in the provisions dealing with ownership of the improvements which have been constructed by the lessee on the premises in accordance with the requirements of the terms of the lease.

In the *Meade Heights, Sheridanville* and *Conley* cases the lessee has the right to remove the improvements upon termination of the lease; in the *Fort Dix* case the buildings erected become the property of the United States upon completion; and in the *Offutt* case all improvements made upon the leased premises remain the property of the government without compensation. In each of these cases the courts held that under the provisions of the Wherry Act and the Military Leasing Act, Congress had consented to taxation of the lessee's interest and that each of the several states had by appropriate legislation authorized a personal property or leasehold tax on the interest of the lessee. However, none of these cases holds that the United States has consented to taxation of its property.

Our examination of the pertinent provisions of the Wherry Act and the Military Leasing Act, which are copied in the margin, in the light of the cases construing them convinces us that even if the United States has receded taxing jurisdiction to the state and its political subdivisions, it did not consent to taxation of property owned by the United States, but at most limited its consent to taxation of the interest of the lessee. However, in our view of the

case it is unnecessary to decide whether the Wherry Act, in referring to the Military Leasing Act, sufficiently indicates that consent was granted to tax any property of the lessee where that property is located in a federal enclave.

■ Even if Congress has consented to taxation of the interest of the lessee it is necessary to the validity of the tax herein assessed that in addition to such permission the state has granted the county the power to levy the tax. And since this depends upon the nature of the lessee's interest, the next inquiry is to determine the interest of the lessee in the improvements and other property furnished pursuant to its lease contract, which provides that such property "shall remain on the leased premises and be the property of the government without compensation" therefor.

It is well settled that as a general rule where the terms of a lease require the lessee to erect buildings upon the leased premises, and there is no agreement for their removal by the lessee he has no right to remove them because, subject to some exceptions as in the case of fixtures, everything annexed to the freehold immediately becomes a part thereof. *Marble Co.* v. *Standard Gas Co.*, 155 Va. 249, 154 S. E. 518; *Roberts Coal Co.* v. *Corder Co.*, 143 Va. 133, 129 S. E. 341; *Tunis Co.* v. *Dennis Co.*, 97 Va. 682, 34 S. E. 613; *Tait's Ex'or* v. *Central Lunatic Asylum*, 84 Va. 271, 4 S. E. 697; *Effinger* v. *Hall*, 81 Va. 94. In the *Marble Company* case this principle was expressed in the following language:

" 'The general rule is that buildings erected by the tenant on the leased premises, pursuant to a covenant in the lease, are not removable as trade fixtures unless the lease expressly or impliedly reserves to the lessee the right to remove them. *Peirce* v. *Grice*, 92 Va. 763, 24 S. E. 392; *Deane* v. *Hutchinson*, 40 N. J. Eq. 83, 2 Atl. 292. * * *

" 'It is said to be an essential quality of all removable erections that they shall have been made under such circumstances as show that the tenant made them of his own volition and for his own benefit, intending that they should remain his property, and not in fulfilment of a duty or obligation which he owed the lessor. *Deane* v. *Hutchinson, supra;* Ewell on Fixtures, pages 88-9.'

"In 26 C. J., 717, we find the law stated thus: 'When it is stipulated that articles or structures, ordinarily removable by the tenant, shall belong to the landlord on the expiration of the term, the latter, it seems, acquires a vested interest in such articles or structures im-

mediately on their annexation, which interest is capable of transfer. * * *' " 155 Va., at page 255.

In the instant case, no right of removal was reserved to the lessee, but to the contrary and as pointed out above, the lease contract expressly provides that the improvements shall remain on the land and be the property of the federal government without compensation. Hence, title to the improvements vested upon their erection in the United States in fee simple, and therefore the only property owned by lessee is a leasehold interest in the land and buildings for a fixed period of years.

The final inquiry is to determine whether the leasehold owned by lessee is taxable under the law of Virginia.

While section 168 of the Virginia Constitution provides that "all property except as hereinafter provided shall be taxed," it is well settled that this mandate is not self-executing. Legislation is necessary to carry it into effect and before a tax may be imposed the taxing official "must be able to put his finger upon the letter of authority." *Commonwealth* v. *Stringfellow*, 173 Va. 284, 4 S. E. (2d) 357, and cases there cited. In Virginia, except for certain exceptions not here material, all taxable real property and all tangible personal property is segregated and made subject to local taxation only (Code, § 58-9), and all intangible personal property is segregated and made subject to State taxation only (Code, § 58-10). Under the rules to be observed in the construction of the provisions of the Code, the words real estate, land or lands "shall be construed to include lands, tenements and hereditaments, and all rights and appurtenances thereto and interests therein, *other than a chattel interest,*" (Code, § 1-13.12), and the words personal estate or personal property "shall include chattels real and such other estate as, upon the death of the owner intestate, would devolve upon his personal representative" (Code, § 1-13.20; *Commonwealth* v. *Carter*, 126 Va. 469, 102 S. E. 58). (Italics supplied).

In 1 Minor on Real Property, (2d ed., Ribble), § 335, p. 433, it is said: "Estates for years are *chattels real,* and, upon the death of the owner intestate, go to his *personal representative,* and not to his *heir,* while a freehold estate, independently of statute, never goes to the owner's personal representative." Hence, unless otherwise provided by statute, a chattel real or leasehold is intangible personal property and not real property and therefore the leasehold owned by lessee may not be taxed by the county but only by the State.

Prior to the amendment of Code, § 58-758,[3] which became effective for the tax year beginning January 1, 1955, there were no statutory provisions under which either the State or its subdivisions were authorized to tax a leasehold. Nor is the leasehold interest of lessee taxable under the rule of *City of Norfolk* v. *Perry Co.*, 108 Va. 28, 61 S. E. 867, that an owner of a perpetual leasehold may be taxed as though he were the virtual owner of the fee. Hence, the leasehold interest of the lessee was not taxable under the law of Virginia for the years in question. The result is the same regardless of whether the omission of the General Assembly to enact an applicable statutory provision was intentional or unintentional. "It is not the province or within the power of the court to make the assessment." *Willis* v. *Commonwealth*, 97 Va. 667, 34 S. E. 460.

Consequently, we hold that even if the United States has given its consent to the taxation of lessee's interest in the property here involved, there was no statutory authority for the real estate taxes assessed by the county against the leasehold of lessee for the years 1952, 1953 and 1954. Accordingly, the order appealed from is affirmed.

*Affirmed.*

---

[3] The 1954 amendment to Code, § 58-758, provides in pertinent part:
"For the purposes of this chapter, and other provisions of law relating to the assessment of real estate for taxation the term 'taxable real estate' shall include a leasehold interest in every case in which the land or improvements, or both, as the case may be, are exempt from assessment for taxation to the owner."