**Patricia SCHLIEP, Plaintiff,**

v.

**Victor DeMARAS et al., Defendants.**

**Civ. A. No. 1817–73.**

United States District Court,
District of Columbia.

March 16, 1976.

---

**5.** Inmate Classification Manual, Chapter 5, paragraph 1, subparagraph E(4).

John M. Elliot and Steven L. Friedman, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., Francis P. Desmond, Pileggi & Desmond, Chester, Pa., Leonard A. Fink, Epstein, Freedman, Duncan & Medalie, Washington, D. C., for plaintiff Patricia Schliep.

James C. Gregg, MacLeay, Lynch, Bernhard & Gregg, Washington, D. C., for defendant Jaskiewicz.

Daniel P. Levitt, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants DeMaras, Lourie, MacKenzie and Haberkorn.

## MEMORANDUM AND ORDER

SIRICA, District Judge.

The defendants in this case have moved for summary judgment; the plaintiff opposes.

This is an action by Patricia Schliep for actual damages which the defendants allegedly caused her deceased husband August Schliep and for punitive damages. The case was originally brought by her husband, but he died unexpectedly about five months afterward. The defendants, Messrs. Jaskiewicz, DeMaras, MacKenzie, Lourie, and Haberkorn, are members of a group that allegedly breached a contract with Schliep and/or defrauded him.

The plaintiff alleges basically the following:

In May of 1970, Jaskiewicz, on behalf of at least part of the group, telephoned Schliep and asked him to contact John Akers, the owner of Akers Motor Lines, and to personally initiate negotiations with Akers for the sale of the corporation to the group. Jaskiewicz promised that if Schliep would do so, and if the group should buy the corporation, Schliep would be made president of Akers Motor Lines. Schliep accepted and shortly thereafter met with Akers on behalf of the group. Some two years later, however, when the group finally acquired Akers Motor Lines, the group made defendant Lourie president of the line and not Schliep.

The plaintiff claims that on these facts she is entitled to a judgment based on breach of contract or fraud or both.

As to the contract claim, the defendants DeMaras, MacKenzie, Haberkorn, and Lourie have moved for summary judgment on four separate grounds:

(1) Jaskiewicz did not promise Schliep the presidency of Akers Motor Lines if Schliep would initiate negotiations with Akers, and the plaintiff cannot prove to the contrary by competent evidence;

(2) assuming that Jaskiewicz did make such a promise Schliep was acting as a broker without a license, and therefore was not entitled to compensation;

(3) assuming that Jaskiewicz did make such a promise, there was an implied or constructive condition in the agreement that the defendants would be liable only if Schliep was a "procuring cause" of the sale of Akers Motor Lines to the group, and it is clear that he was not;

(4) assuming that Jaskiewicz did make such a promise, the plaintiff will be unable to show by competent evidence at trial that these defendants are bound by the promise.

As to the fraud claim, these defendants have moved for summary judgment on the grounds that the plaintiff cannot prove that Jaskiewicz made the promise or that they would be bound by it if he did.

The defendant Jaskiewicz has also moved for summary judgment. With regard to the contract claim, he has argued that he never made the promise in question to Schliep, that Schliep was acting as a broker without a license, and that Schliep was not a "procuring cause" of the sale.* With regard to the fraud claim, he has argued that the plaintiff cannot prove that he made the promise to Schliep.

## I. The Standard for Determining the Propriety of Granting a Summary Judgment

In order to grant a motion for summary judgment, the Court of Appeals for

---

* Jaskiewicz has sought to amend his answer to include these last two defenses. Since the plaintiff has not shown that she will be preju-diced thereby, leave to amend is hereby granted.

the D. C. Circuit has said in *Nyhus v. Travel Management Corp.*, 151 U.S.App. D.C. 269, 271, 466 F.2d 440, 442 (1972):

> the record must show the movant's right to it "with such clarity as to leave no room for controversy," and must demonstrate that his opponent "would not be entitled to [prevail] under any discernible circumstances."

This standard is obviously even more lenient than that for a directed verdict. No doubt, it reflects the additional consideration that at this stage the party moved against cannot be expected to have his facts so well in control that he will be able to present as favorable a case as he might if allowed to go to trial. The motions, therefore, should be judged with that added consideration in mind.

## II. The Contract Claim

### A. Whether the Defendants are Entitled to Summary Judgment Because Schliep was an Unlicensed Broker

The defendants have all argued that, assuming Schliep was retained to initiate negotiations with Akers Motor Lines, he was thereby acting as a broker. Therefore, they claim, he was subject to either the District of Columbia or the North Carolina brokers statute. Since both these statutes make it criminally illegal for a person to act as a "broker" as that term is defined unless he has been licensed by the particular jurisdiction, and since Schliep concededly was not so licensed, they argue that the alleged contract was illegal and therefore unenforceable.

■ The D.C. statute, 45 D.C.Code § 1401 et seq. (1973), defines "broker" somewhat more broadly than does the North Carolina statute; it includes persons who deal not only in real estate but also in "business chances." Perhaps for this reason, the plaintiff argues quite strongly that under the conflicts law of the District of Columbia the North Carolina statute should apply.

■ In the District of Columbia, the way to determine what law will be applied on a particular issue is:

(1) to ascertain "the underlying policies and interests sought to be regulated and protected by the rules of the relevant jurisdictions, and to determine whether on the facts of the case these differing state interests are in conflict." *Gaither v. Myers*, 131 U.S.App.D.C. 216, 220, 404 F.2d 216, 222 (1968);

(2) if the interests are in conflict, to determine which jurisdiction has the most substantial interest. *Dovell v. Arundel Supply Corp.*, 124 U.S.App.D.C. 89, 90, 361 F.2d 543, 544 (1966).

The plaintiff argues that since none of the parties to the transaction was a resident of the District of Columbia at the time, since Akers Motor Lines was not located in the District, and since Schliep did not solicit the defendants in the District, D.C. has no interest at all in regulating Schliep as a broker; North Carolina, on the other hand, where Akers Motor Lines was located, where Akers resided, and where such "brokerage" as Schliep engaged in took place, clearly did have an interest in regulating Schliep's conduct. Therefore, the plaintiff argues, this Court should apply North Carolina law.

■ The defendants, for their part, have merely stated that if the plaintiff wishes to avail herself of a D.C. court, she should be subject to the D.C. brokers statute. This is certainly not an interest related in any way to the brokers statute, and at any rate does not show that the District of Columbia has a *more* substantial interest in having its brokers statute applied than does North Carolina. This Court holds, then, that it should apply the North Carolina statute.

The North Carolina version, N.C.Gen. Stat. § 93A-1 et seq. (1975), regulated at the time in question persons who for valuable consideration "negotiate[d] the purchase or sale or exchange of real estate." The defendants have argued that what Schliep did was "negotiation" and that, since the sale of Akers Motor Lines included the sale of real estate owned by the line, it was negotiation of the sale of "real estate."

The Court has been unable to find any North Carolina law which clearly answers the question of whether Schliep's conduct subjected him to the requirements of this statute. Therefore, it must decide what a North Carolina court would do if it were confronted with this question. In doing so, however, this Court is guided by the determination in *McArver v. Gerukos*, 265 N.C. 413, 144 S.E.2d 277, 280 (1965), that the purpose of the statute at the time was "to protect sellers, purchasers, lessors and lessees of real property from fraudulent or incompetent brokers and salesmen." Given this purpose, it is somewhat doubtful that the North Carolina legislature would have intended the requirements of the statute to extend to a person acting as a middleman between businessmen who were considering the purchase and sale of an entire business; in such instances, the parties can generally be considered quite competent to fend for themselves. It is even more doubtful when the middleman was simply *initiating* negotiations for the parties. In light of these considerations, it does not appear to this Court at all certain that the North Carolina legislature intended such an extension of the statute; it is definitely not so certain as is necessary in construing a criminal statute in a situation such as this, where the effect would be to impose a penalty on the middleman. Therefore, the Court concludes that the plaintiff is not precluded by the North Carolina brokers statute from obtaining such compensation as she might be entitled to.

B. Whether the Defendants are Entitled to Summary Judgment Because Schliep was not the "Procuring Cause" of the Sale of Akers Motor Lines to the Defendants

It is undisputed that two years passed between the time Schliep met with Akers and the time the defendants acquired Akers Motor Lines. During that period, the line was acquired by F. L. Cappaert, for whom DeMaras worked at the time, and who sold or gave to DeMaras and the others an option to buy the line at a later time. About six months after Cappaert bought Akers Motor Lines, DeMaras and the others exercised their option to buy it.

Given these facts, the defendants have argued that, assuming there was a contract, the plaintiff is not entitled to compensation because there is an implied or constructive condition in it that Schliep must have been a "procuring cause" of the eventual sale of Akers Motor Lines to the defendants, and he clearly was not. But if such a condition must be implied in the conduct of the parties and the business setting, the defendants have not made clear in what conduct and circumstances it was implied. If, on the other hand, such a condition is constructive—that is, read into the contract as a matter of equity—then the plaintiff might be able to overcome it, perhaps by showing that the intervening sale of the line to Cappaert was a mere smokescreen to avoid liability on Schliep's contract. Whether such a condition is constructive or implied, then, it does not justify granting defendants' motions for summary judgment on the contract claim at this time.

C. Whether the Defendants are Entitled to Summary Judgment Because the Plaintiff will be Unable to Show by Competent Evidence at Trial that there was a Binding Agreement

The defendants admit that Jaskiewicz asked Schliep to meet with Akers and that Schliep later did so. What they deny is that there was any consideration for the promise. More specifically, they deny that Jaskiewicz promised that Schliep would be made president of Akers Motor Lines. They argue now that the plaintiff cannot prove that in fact such a promise was made. The plaintiff, of course, disputes this. In doing so she relies heavily on the proffered testimony of herself, Lloyd Mitchell (the deceased Schliep's longtime friend and associate), and Elizabeth Bell (the deceased Schliep's sister) that Schliep told each of them separately that during the May,

1970, phone conversation Jaskiewicz had promised that Schliep would be made president if he would initiate negotiations with Akers. The Court has grave doubts about the admissibility of this testimony to show, either directly or indirectly, that such a promise was made. But because the Court feels there is adequate other proposed testimony to overcome a motion for summary judgment on this issue, it need not be concerned with that matter now.

The plaintiff herself has offered to testify to the following:

(1) that her husband had been vice-president and general manager of Chemical Leamon Tank Lines and president of Quality Carriers. A jury might well infer from this that Schliep was a sophisticated businessman who knew what a binding agreement was and who would not base his future on groundless hopes;

(2) that after Schliep left Chemical Leamon he did not look for another job immediately;

(3) that Schliep took the plaintiff to the area around where Akers Motor Lines was located, because, he said, he wanted to see the area where he was going to serve as president of the line. This would be admissible to show a state of mind which was probative of a prior binding promise;

(4) that after Schliep accepted another position, he wrote a letter to defendant DeMaras demanding compensation in lieu of the presidency; that she overheard a conversation between Jaskiewicz and her husband about this letter, in which her husband said, "I think I'll get myself a good Philadelphia lawyer;" and that Jaskiewicz, a lawyer himself, responded, "You have a case that anybody could handle, not just a Philadelphia lawyer."

The proffer of this circumstantial evidence that the promise was made is sufficient, in this Court's view, to overcome the defendants' motions for summary judgment on the contract claim on this ground.

**D. Whether the Plaintiff Might be Able to Show that Each of the Defendants was Liable for a Breach of the Agreement**

■ The plaintiff, of course, has the burden of showing that each defendant is liable for the breach of the alleged contract. Jaskiewicz seems to concede that if the promise was made, he is liable. The other defendants, however, argue strongly that even if Jaskiewicz did promise Schliep the presidency of Akers Motor Lines, they are not bound by it.

There is at the outset a problem of determining exactly by what theory the plaintiff intends to hold each of these other defendants liable. She may be relying strictly on the existence of an agency-principal relationship. But there are problems with holding Lourie and Haberkorn liable under this, since neither apparently became involved in the acquisition of the line until some time after the alleged promise was made. It is more likely, then, that the plaintiff is planning on showing that the group formed a partnership to purchase Akers Motor Lines and that this partnership is liable for the breach of the contract. But there are a number of problems with this theory also. The first is that it is not at all clear that the definition of a "partnership" includes a group which has come together to *purchase* a business. Section 6 of the Uniform Partnership Act, which has been enacted in relevant part into law by both North Carolina and the District of Columbia, defines a "partnership" merely as "an association of two or more persons *to carry on as co-owners a business* for profit." (emphasis added)

But even assuming that an association to purchase a business can be a partnership, the plaintiff must then show at least:

(1) that a partnership existed at the time of the alleged contract;

(2) that the partnership is liable on the contract;

(3) that each defendant became a partner.

There may, of course, be many more problems with this theory. But these at least cannot be answered in either side's favor at this time. Therefore, the Court will reserve judgment on this issue until it has had the benefit of supplemental argument.

### III. The Fraud Claim

The plaintiff has alleged that the defendants are also liable for defrauding Schliep by promising him that he would be made president of Akers Motor Lines if he should begin negotiations for the sale of the line and then failing to deliver on that promise. She also claims that this act was a result of a conspiracy to induce Schliep to perform valuable services and then to deprive him of the promised compensation.

 One of the elements of this kind of fraud, and of the related tort of conspiracy to defraud, as the plaintiff has conceded, is that the alleged promise have been made with no intention to carry it out. There is, however, no evidence in the record to suggest even faintly that, assuming Jaskiewicz made the promise, he made it in bad faith. Nor is there anything in the record to suggest that, assuming at least some of the other defendants knew of the promise at all, they were using Jaskiewicz as a tool to dupe Schliep. The Court has viewed the allegations in a light as favorable as it can to the plaintiff consonant with fairness to the defendants, but it has no choice but to grant the defendants' motions for summary judgment as to this portion of the case.

### IV. Order

Accordingly, it is this 16th day of March, 1976,

ORDERED that the defendants' motions for summary judgment, to the extent of the plaintiff's fraud and conspiracy claims be, and the same hereby is, granted; and it is

FURTHER ORDERED that defendant Jaskiewicz's motion for summary judgment on the contract claim be, and the same hereby is, denied; and it is

FURTHER ORDERED that defendants DeMaras, MacKenzie, Haberkorn and Lourie's motion for summary judgment on the contract claim be, and the same hereby is, reserved pending further argument. The plaintiff shall have twenty (20) days in which to submit a supplemental memorandum to the Court on this issue; the defendants shall have ten (10) days thereafter in which to respond; the plaintiff shall then have ten (10) days in which to file a rebuttal.