Booker THOMAS et al., Plaintiffs,

v.

UNITED MINE WORKERS OF AMERICA et al., Defendants.

Civ. A. No. 75–1998.

United States District Court,
District of Columbia.

Nov. 23, 1976.

Roger E. Zuckerman, Philip L. Kellogg, and James L. Lyons, Kellogg, Williams & Lyons, Washington, D. C., for plaintiffs.

Joseph A. Yablonski, Charles R. Both, and Daniel B. Edelman, Yablonski, Both & Edelman Washington, D. C., Harrison Combs and Thomas H. Geoghegan, United Mine Workers of America, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

SIRICA, District Judge.

The plaintiffs in this case are five retired bituminous coal mine workers who are members of the United Mine Workers of America union ("UMWA"). The defendants are that union and its president, Arnold Miller. The plaintiffs claim that the defendants have violated a number of their rights of expression and of fair representation in collective bargaining negotiations. At this time, the defendants have moved for summary judgment.

### I.

The facts which the plaintiffs have pleaded, and which the Court must at this stage accept as true, are these. In 1972, after a number of years of bitter fighting, the defendant Arnold Miller was by a narrow majority elected president of the UMWA. But the battles left their scars. Miller and his associates knew that the retired union members had consistently backed the opposition and they decided to repay retirees for that choice when the opportunity arose.

That opportunity came the following year. In the fall of 1973, the UMWA convened in a constitutional convention to enact a new constitution for the union and to decide on preliminary bargaining objectives for the collective bargaining negotiations with the bituminous coal mine owners which would take place in the fall of 1974. The members did in fact adopt a new constitution and they also decided on certain goals for the upcoming negotiations. One particular goal was that:

. . . [the] pension of the miner be increased periodically over the life of the next contract to at least $500 a month, with a cost of living escalator clause.

. . .

By "miner" the members meant *all* miners—both those retired at the time and those who would retire in the future.

But Miller and other union leaders decided not to seek this goal for all union members equally. They decided that for members who would retire in the future they would seek the full $500, but for persons who were already retired they would seek an increase to only about $200–$250 a month. In addition, they decided that the pensions for future retirees should be paid out of a fund separate from the one already set up to pay the pensions of persons then retired. This old fund was called the 1950 Fund. In order to help pay for the new fund, they would allow the old fund to be depleted.

To prevent any opposition to this plan, and perhaps also to punish then-retired

members a bit more, Miller and his associates sought to cut off all avenues of expression of pensioned members' views. They began at the lowest level, and excluded retired UMWA members from the deliberations of the local bargaining conferences. These conferences formulated proposed positions that union representatives might take in negotiations with mine owners. These proposals were then sent to the central Bargaining Council, which made the final decision on what the union's bargaining position would be.

Miller and his associates also delayed the election of the union's first vice-president for pensioner affairs until November of 1974, and when the person elected to that office was finally installed, they refused to let him participate in the 1974 contract negotiations.

Finally, the Miller group actively concealed from the retired members and from the membership in general any hint that they planned to negotiate for a separate, less generous, pension plan for those union members who were already retired than for actively working members.

Subsequently, during the fall of 1974, Miller and the other bargainers successfully negotiated for the two-tiered pension system they had devised. But they decided not to disclose this fact to the union membership until approximately five days before the ratification vote was to be taken at the local union level. And when they did disclose the nature of the pension system, they refused to let the vice-president for pensioner affairs participate in the ratification process; they denied to individual retired members any opportunity to express their views to the members in general; and they refused to let retirees vote on the ratification of the contract. When the final vote was taken, the contract, with the two-tiered pension system, was ratified by a small majority.

## II.

■ The burden which the movant must meet in a summary judgment motion is concededly a difficult one. As stated in *Nyhus v. Travel Management Corp.,* 151 U.S.App.D.C. 269, 466 F.2d 440, 442 (1972):

> [T]he record must show the movant's right to it "with such clarity as to leave no room for controversy," and must demonstrate that his opponent "would not be entitled to [prevail] under any discernible circumstances."

As is implicit in this statement, the Court must consider the posture of the case in making these determinations. The party moved against cannot be expected to have his case as well under control in its early stages as he might later on or if he should be allowed to go to trial. *Schliep v. DeMaras,* 410 F.Supp. 1190, 1193 (D.C.D.C.1976). Cf. *1199 DC, National Union of Hospital and Health Care Employees v. National Union of Hospital and Health Care Employees,* 175 U.S.App.D.C. 70, 533 F.2d 1205 (1976).

The defendants here have made their motion at a very early stage; the plaintiffs have not yet had the opportunity to conduct depositions or interrogatories. It is with this in mind that the Court must decide this motion.

## III.

For purposes of this motion, the plaintiffs' allegations of violations of their rights of expression may be divided into four categories:

(1) that the defendants violated the plaintiffs' right to express their views to the local bargaining conferences;

(2) that the defendants violated the plaintiffs' right, through their representative, the vice-president for pensioner affairs, to participate in the preparation of a unified stance for negotiations with the mine owners and in the deliberations of the members leading to ratification of the contract;

(3) that the defendants violated the plaintiffs' right to express their views to the union's members and officers from the time that the bargaining conferences submitted their recommendations to the Bargaining Council till the time that the contract with the mine owners was ratified;

(4) that the defendants violated the plaintiffs' right to vote for or against the ratification of the contract.

The plaintiffs allege that the defendants directly violated these rights by their repressive conduct and indirectly violated them by concealing the negotiating tack they had decided to take with regard to pensions and thus not alerting retired members to the need to express their views.

## A

The plaintiffs' right to participate in the development of negotiating strategies at the local bargaining conferences springs, they claim, from federal statute and from contract. The federal statute they rely on is § 101(a) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(1970). Section 411(a)(2) generally gives to every member of a particular labor organization the right to speak and assemble freely at union meetings and elsewhere.[1] Section 411(a)(1) gives each member the right to a voice equal to that of other members at certain meetings and on certain subjects.[2] Both rights are subject to reasonable regulation by the union.

The contract provisions that they rely on are sections 2[3] and 1[4] of article XII of the 1973 union constitution, which follow fairly closely the language of 29 U.S.C. § 411(a)(2) and (1) respectively. Both sides agree that the 1973 UMWA constitution was a contract between the union and its members and that these plaintiffs may sue the defendants under it. But since these particular contract claims appear at this time to add nothing to the statutory ones, they need not be discussed separately.

The plaintiffs' claim under 29 U.S.C. § 411(a)(2) is that under this provision deliberations of the local bargaining conferences were "meetings" of a labor organization, and that as "members" of the union they had the right to present their views at these conferences. They allege that the defendants violated this right directly by disallowing them from doing so, and indirectly by failing to disclose the nature of the bargaining position the defendants had decided to take.

The plaintiffs' claim under 29 U.S.C. § 411(a)(1) is that under this provision deliberations of the conferences were "membership meetings" and that they as "members" of the union had the right to an equal opportunity to express their views to these

---

1. Section 411(a)(2) of title 29 provides in relevant part as follows:

   Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings . . . . .

2. Section 411(a)(1) of title 29 provides as follows:

   Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

3. Article XII, section 2 of the union constitution reads as follows:

   Every member of the Union shall have the right to meet and assemble freely with other members, and to express any views, arguments or opinions; and to express his views upon the policies and business of the Union, and upon candidates for nomination and election to offices of the Union.

4. Article XII, section 1 of the union constitution reads as follows:

   All members in good standing shall have equal rights and privileges in the Union and every member shall have the right, subject to the provisions of this Constitution, to nominate candidates, vote in all elections and referendums, to attend membership meetings of his Local Union and to participate in the discussions, deliberations and voting upon the business of such meetings, provided, however, only working members may nominate or vote for Local Union President, Vice President, Mine Committeemen and Safety Committeemen.

conferences. They allege that, while they as retired members were excluded from the conferences, others, notably actively working members, were allowed to participate.

The defendants' sole ground for summary judgment on both of these counts at this time is that neither right extends to the deliberations of bargaining conferences.

The function of the local conferences, according to the 1973 union constitution, was to obtain:

suggestions, views and recommendations reflecting the desires of the members as to what demands should be made and what priorities should be set in the negotiations. [*Constitution of the International Union, United Mine Workers of America,* art. XIX, § 2 (1973)]

It is not clear exactly how the conferences obtained these recommendations, but it does appear that the views of all the members, in groups or individually, were invited. In this context, the words of the statute, that the federal right to express views is limited to "meetings" of the union, and that the right to an equal voice is limited to "membership meetings," is not very helpful. Nor is such legislative history as exists on this subject of aid. The Court must, therefore, turn to the purpose of the statute itself.

That purpose, as the parties agree, is to insure at least the rudiments of democracy in union deliberations on matters of some importance. Here, the deliberations of the local conferences led to recommendations to the central Bargaining Council on how the contract negotiations were to proceed. Though these recommendations did not bind the Council to a particular bargaining position, they were a major source to that body of the members' concerns. The Court concludes that these conferences performed a sufficiently important function and drew from a sufficiently wide number of members to warrant the protection of 29 U.S.C. § 411(a)(2) and (1). Therefore, the defendants' motion for summary judgment on this aspect of the case must be denied.

## B

The plaintiffs allege that the defendants have also violated retired members' rights of expression under 29 U.S.C. § 411(a)(1) and (2) by preventing the vice-president for pensioner affairs from participating in the preparations for the collective bargaining negotiations or in the deliberations leading up to ratification of the contract, and by concealing from him the exact nature of the bargaining plan the union negotiators planned to take. The defendants respond that neither section 411(a)(1) nor section 411(a)(2) extends this far.

The Court finds that it does not have to reach this issue at this time. The union constitution provided that one of the functions of the vice-president for pensioner affairs was to represent "pensioned members in all matters including the negotiation of increased and more equitable benefits . . . ." *Constitution of the International Union, United Mine Workers of America,* art. XX, § 1 (1973). Clearly, this implied a correlative duty on the part of the union leaders to allow him to do so, a duty which was owed not only to the representative himself but also to the retired union members that he represented. This contract provision, then, provides an adequate legal basis for these particular claims. In this Court's view, it has jurisdiction to hear this contract claim, since it arises from a "nucleus" of facts common to the federal claim that the plaintiffs were denied their rights at the bargaining conferences. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Therefore, summary judgment on this count must also be denied.

## C

The plaintiffs' third claim of a violation of their rights of expression is that the defendants did not allow them to present their views to members of the union or its officers in the period between the time that the bargaining conferences submitted their recommendations to the central Bargaining Council until the contract was ratified. In particular, they focus on the alleged facts

that Miller and other union leaders concealed their bargaining plan with regard to pensions until approximately five days before the members were to vote on the contract with the two-tiered pension plan, and that the defendants then did not allow retired members to make their views known to the members before the ratification votes were taken.

On their face, these injuries appear to be directly within the scope of 29 U.S.C. § 411(a)(1) and (2). Since the defendants have given no specific reason at all why summary judgment should be granted on this aspect of the plaintiffs' complaint, summary judgment must be denied.

### D

■■■ The plaintiffs' final claims of violations of their rights of expression are that they were denied the right to vote on ratification of the contract in violation of article XIX, section 7 of the union constitution, and that, in any event, they were discriminated against because actively working union members were allowed to vote and retired members were not, in violation of 29 U.S.C. § 411(a)(1).

As to the claim that the plaintiffs were not allowed to vote, the defendants argue that as the defendant Miller has interpreted the constitution, retired members did not have a right to vote on contract ratifications, and that under article V, section 7 of the constitution, his interpretation is controlling.[5] The plaintiffs, however, have alleged that Miller has acted in bad faith in making this interpretation. The Court must give the plaintiffs an opportunity to probe this possibility through deposition or interrogatory. Therefore, summary judgment on this aspect of the case must be denied at this time.

As to the discrimination claim, the defendants have made two arguments: (1) that the federal right under 29 U.S.C. § 411(a)(1) does not extend to collective bargaining contract ratification votes, and (2) that the right to vote on the contract was denied by reasonable rule.

The first of these arguments clearly must fail. It is true that 29 U.S.C. § 411(a)(1) does not, by itself, imply a right to vote on the ratification of a collective bargaining contract. *Confederated Independent Unions v. Rockwell-Standard Co.*, 465 F.2d 1137, 1140 (3d Cir. 1972); *Cleveland Orchestra Committee v. Cleveland Federation of Musicians*, 303 F.2d 229, 232 (6th Cir. 1962). But where that right is provided to some members, 29 U.S.C. § 411(a)(1) prevents the union from arbitrarily denying that right to others.

The defendants' second argument also must fail at this time. First, it depends for its force on the validity of the defendant Miller's interpretation of the union constitution, which the Court has just held the plaintiffs must be allowed to explore. Second, the argument depends on the reasonableness of depriving retired members of this right while granting it to actively working members. While the defendants have given this Court weighty reason for ultimately concluding that a rule denying the voting right to retired members would be reasonable, the plaintiffs must be allowed the opportunity to have discovery on this question also. Cf. *1199 DC, National Union of Hospital and Health Care Employees v. National Union of Hospital and Health Care Employees*, 175 U.S.App.D.C. 70, 533 F.2d 1205, 1209 (1976). Therefore, summary judgment on this aspect of the case must be denied at this time also.

### IV.

■■■ The plaintiffs also allege that the defendants injured them in the collective bargaining negotiations themselves. First, they note that the members as a whole had voted at the 1973 constitutional convention to bargain for an increase in pensions to

---

5. Article V, section 7 of the union constitution provides in relevant part as follows:

[The President] shall interpret the meaning of the International Constitution but his inter-

pretation shall be subject to repeal by the International Executive Board . . . ..

$500 a month for *all* retirees, present and future. But the defendants did not fairly represent this interest for those already retired, the plaintiffs claim, for before Miller and the other bargainers on the labor side ever stepped to the bargaining table, they had decided to try to obtain only $200–$250 a month for that group.

Second, the plaintiffs allege that the defendants negotiated for the depletion of the 1950 Fund from which then-retired members were drawing their pensions in order to benefit future retirees.

Both of these injuries, the plaintiffs claim, were violations of the defendants' duty to represent retirees' interests fairly, a duty which, they claim, arises from both federal law [6] and article XII, section 4 of the union constitution.[7] The plaintiffs also argue that allowing the depletion of the 1950 Fund was a violation of the defendants' fiduciary obligations under federal law, § 501(a) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 501(a) (1970).[8]

As to the federal aspect of the claim of breach of the duty of fair representation, the defendants point out that this obligation is one that is implied from the majority rule that section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a)(1970), imposes on collective bargaining. They also note that retired workers are not under the majority rule provision of this federal statute. *Allied Chemical & Alkali Workers of America v. Pittsburgh Plate Glass Co.,* 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). Therefore, they conclude, there is no reason to imply a federal duty of fair representation with regard to retired persons.

As to the claim that the defendants violated 29 U.S.C. § 501(a), the defendants argue that Congress could not have meant to extend the reach of that section so far, because to do so would substantially interfere with one of the overriding purposes of the labor laws—to insure the efficient operation of the collective bargaining mechanism. Cf. 29 U.S.C. § 151 (1970). This, the defendants note, is precisely one of the reasons why the Supreme Court in *Pittsburgh Plate Glass Co., supra,* held that retiree benefits are only a permissible subject of collective bargaining.

Although the defendants may be correct on both of these counts, the Court need not decide these questions now. For the defendants have not moved for summary judgment on the plaintiffs' claim that the defendants had a duty of fair representation under the union constitution. Since the plaintiffs have made other arguable federal claims arising out of the same common nucleus of operative facts, the Court also has jurisdiction to hear this contract claim. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

V.

ORDERED that the defendants' motion for summary judgment be, and the same hereby is, denied as to all counts.

---

**6.** *See, e. g., Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

**7.** Article XII, section 4 of the union constitution provides as follows:

Every member shall have the right to be fairly and faithfully represented by the Union in the negotiation of collective bargaining agreements and in the enforcement of his rights under collective agreements.

**8.** Section 501(a) of title 29 reads in relevant part as follows:

The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members . . . . .
The plaintiffs have not alleged that by allowing the old fund to be depleted the defendants violated the contract that presumably set up that fund.