### CSB, INC., d/b/a Carolina Media Brokers

v.

### CRADLE OF DEMOCRACY BROADCASTING COMPANY, INC., Karas Broadcasting Company and Oldric J. LaBell, Jr.

#### Civ. A. No. 82–0218–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Sept. 2, 1982.

Ernest C. Vaughan, Jr., B. Randolph Boyd, Richmond, Va., for plaintiff.

Oldric J. LaBell, Jr., Newport News, Va., pro se and for defendants.

OPINION

WARRINER, District Judge.

This is a diversity action to collect a broker's commission for the sale of a radio station in York County, Virginia. Before the Court is plaintiff's motion for partial summary judgment filed on 16 July 1982 against defendant Cradle of Democracy Broadcasting Company, Inc., with respect to Count I of its complaint alleging the breach of a business listing agreement between plaintiff and defendant. The parties by stipulation previously dismissed defendant Karas Broadcasting; the plaintiff acknowledges defendant LaBell's lack of liability in this particular count.

On 27 February 1981 the plaintiff, CSB, Inc., entered into a listing agreement with defendant, Cradle of Democracy Broadcast-

ing Company, Inc., (hereinafter C.O.D.). By the terms of the agreement C.O.D. engaged the plaintiff to obtain a purchaser for its business, radio station WYVA, for which C.O.D. agreed to pay plaintiff a commission of 5% of the gross sales price received for the station.

From the factual stipulations in the record it is clear that on or about the time this listing agreement was made plaintiff knew that defendant held its tower site and studio under leaseholds, that the tower site lease contained an option to purchase, and that defendant was behind in its rent payments under both leases. Plaintiff also knew from prior experience that the right to occupy the studio, transmitter, and tower site is a very important part of a radio station transaction.

On 1 April 1981 the plaintiff informed Stan Karas, the principal of the ultimate purchaser of WYVA, that the station was for sale and furnished him with all relevant information including copies of the leases. Karas' group and C.O.D. executed a letter agreement on 10 April 1981 for the purchase and sale of station assets, conditioned upon the assignment of the leases for the studio and tower site. The plaintiff was not involved in subsequent negotiations, between buyer and seller nor was plaintiff involved in the transfer of the leaseholds. Buyer and seller negotiated and entered into a sales contract on 17 August 1981. Because of C.O.D.'s prior defaults in lease payments and other considerations, the buyer ultimately executed new lease agreements for both the studio and tower site directly with the lessors. The new studio lease agreement omitted the option to purchase provision of the original lease.

The sale of the radio station was closed on 29 December 1981 with disbursement of proceeds postponed until 2 February 1982. The accepted gross sales price of WYVA was $475,000, 5 percent of which is $23,750. There is no dispute about the amount of the commission, if any be due. Defendant C.O.D. refuses to pay plaintiff its commission because plaintiff was not licensed as a real estate broker in the State of Virginia at the time the commission was earned.

Pursuant to the Court's pretrial order, plaintiff and defendant filed stipulations of facts and exhibits to be used in ruling upon Count I of plaintiff's complaint. Plaintiff filed its motion for summary judgment based upon those facts and exhibits on 16 July 1982, defendant responded on 27 July 1982, and plaintiff rebutted on 2 August 1982. The motion is now ripe for decision.

The question before the Court is whether plaintiff is barred from recovering its commission because it was not a licensed real estate broker in Virginia. The Virginia real estate license statute makes it "unlawful for any person ... to act as a real estate broker ... without a license issued by the Virginia Real Estate Commission." Va. Code § 54–749 (1982). The Code of Virginia defines a real estate broker as:

[A]ny person, ... who, for a compensation or a valuable consideration sells or offers for sale, buys or offers to buy, or negotiates the purchase or sale or exchange of real estate, ... or who leases or offers to lease, or rents or offers for rent, any real estate or the improvements thereon for others, as a whole or partial vocation.

Va. Code § 54–730 (1982).

In Virginia the doing of just one of the enumerated acts in the above quoted statute constitutes one a real estate broker. Va. Code § 54–732 (1982).

■ The Court believes that a broker who arranges the sale of a Virginia business as a going concern, which sale involves the transfer of leaseholds, is not a broker of real estate under Virginia law. The defendant cites numerous cases from other jurisdictions where the transfer of a lease as part of the sale of a going business precludes the unlicensed broker from recovering its commission. *See e.g., Doran v. Imeson Aviation,* 419 F.Supp. 586 (D.Wyo. 1976); *De Metre v. Savas,* 93 Ohio App. 367, 113 N.E.2d 902 (1953); *Cohen v. Scola,* 13 N.J.Super. 472, 80 A.2d 643 (1951); *Bierman v. Barthelmeus,* 24 N.J.Misc. 35, 45 A.2d 820 (1946). In every one of these cases the

court interpreted the state real estate broker's licensing statute to apply to the sale of a going business involving leaseholds. But in every one of these cases the applicable statute specifically defined a leasehold as real estate. The Virginia statute does not.

The Code of Virginia defines real estate "to include lands, tenements and hereditaments and all rights and appurtenances thereto and interests therein, other than a chattel interest." Va.Code § 1–13.12 (1979). The Virginia Supreme Court directly addressed this section in *County of Prince William v. Thomason Park,* 197 Va. 861, 91 S.E.2d 441 (1956), in which the Court ruled that "a chattel real or leasehold is intangible personal property and not real property ..." *Id.* at 867, 91 S.E.2d at 446. The Virginia Court recently affirmed this rule in *Burns v. Equitable Associates,* 220 Va. 1020, 265 S.E.2d 737 (1980), where the Court said "[a]t common law, an estate for years was considered personalty.... Absent statutory modification, this remains the law in Virginia." *Id.* at 1029, 265 S.E.2d at 742. There is no statutory modification of this common law rule, therefore, in Virginia leasehold interests are not considered to be real estate.

■ Thus Virginia's real estate broker's licensing statute does not affect the plaintiff because he did not offer for sale or negotiate the purchase or sale of "real estate." Va.Code § 54–730 (1982). Neither did the plaintiff act as one who "leases or offers to lease, or rents or offers for rent, any real estate ...." *Id.* The original leases were already executed at the time the plaintiff brought the buyer and seller together. The new or amended leases resulted from negotiations between the buyer, the seller, and the various lessors, negotiations in which the plaintiff was not involved.

Even if Virginia were to characterize the assignment of the leases involved as the transfer of real estate, the impact of the leases was too insignificant to invoke the

Virginia real estate broker statute. The Fifth Circuit in a similar case, *Hughes v. Chapman,* 272 F.2d 193 (5th Cir. 1959), found that an unlicensed media broker who sold a radio station situated on land leased to the seller was not subject to the requirements of Florida's real estate broker's statute; a statute unlike Virginia's in that it defines real estate to include leaseholds. *Id.* at 194. Even under that statute and despite the fact that the sale of the business included the transfer of a lease, the Fifth Circuit allowed the broker to recover his commission, saying that "the procurement of the assignment of the lease was only incidental to the sale of the radio station franchise and equipment." *Id.* at 195.

The Fifth Circuit relied on New York law as expressed in *Weingast v. Rialto Pastry Shop, Inc.,* 243 N.Y. 113, 152 N.E. 693 (1926), where the court differentiated between a broker in the business of buying and selling leases or interests in real estate and a broker who engages in selling businesses as going concerns although such sales may include the lease of a store or building. "One who makes a specialty of procuring purchasers for restaurants, drug stores, grocery stores, and the like as going concerns, where a lease simply goes with the place as part of the good will, does not become, within [the New York real estate broker statute], a real estate broker." *Id.* 152 N.E. at 694. "When real estate is not the dominant feature of the sale of a business, no real estate license is usually required under New York law." *Backar v. Western States Producing Co.,* 547 F.2d 876, 883 n. 11 (5th Cir. 1977). *See also Marina Management Corp. v. Brewer,* 572 F.2d 43, 48 (2d Cir.), *cert. denied,* 439 U.S. 829, 99 S.Ct. 104, 58 L.Ed.2d 123 (1978).

The New York approach is in line with Virginia's policy reasons for requiring real estate brokers to procure a license. The statute is alleged to be designed to "protect the public from the fraud, misrepresentation and imposition of dishonest and incompetent persons" and is said to be a legiti-

mate exercise of the police power.[1] *Massie v. Dudley,* 173 Va. 42, 55, 3 S.E.2d 176, 181 (1939). In *Schliep v. DeMaras,* 410 F.Supp. 1190 (D.D.C.1976), the district court construing a North Carolina statute similar to Virginia's in content and policy said "[g]iven this purpose, it is somewhat doubtful that the ... legislature would have intended the requirements of the statute to extend to a person acting as a middleman between businessmen who were considering the purchase and sale of an entire business; ... the parties can generally be considered quite competent to fend for themselves." *Id.* at 1194. This Court's concurrence with the viewpoint taken in *Schliep* is reinforced by the effect of that which defendant proposes. Having received the benefit of that which it bargained for, defendant now seeks to deprive plaintiff of the commission which was an essential part of the bargain.[2]

Defendant alleges that the option to purchase included in the original lease of the tower site changes at least that lease to realty, and that as a consequence plaintiff acted as a real estate salesman. Even if defendant's position were accurate, the result would be no different because by the time the sales agreement was entered into the option to purchase had been omitted from the lease.[3]

Finally the defendant argues that under the general law of fixtures the transmission tower, itself, constituted real property, therefore the plaintiff sold real estate when it arranged the sale of the tower as an asset of WYVA. The defendant cites general principles of fixture law which are correct. But it has long been established in Virginia that parties by agreement may "fix the character and control the disposition of property, which in the absence of such a contract, would be held to be a fixture,

...." *Bolin v. Laderberg,* 207 Va. 795, 800, 153 S.E.2d 251, 255 (1967), *quoting Tunis Lumber Co. v. R. G. Dennis Lumber Co.,* 97 Va. 682, 686, 34 S.E. 613, 614 (1899). *See also Bolling v. Hawthorne Coal & Coke Co.,* 197 Va. 554, 566, 90 S.E.2d 159, 167 (1955). In *Bolin* the Virginia court reversed the trial judge's determination based on the law of fixtures that certain equipment installed by the lessee was personalty because the trial court's classification was contrary to that agreed upon by the parties. 153 S.E.2d at 255.

In the present case the transmission tower by the terms of the towersite lease was the property of C.O.D., being specifically removable by C.O.D. should its lease to the site be terminated. In all the transactions concerning the tower, including its sale as an asset of the radio station, C.O.D. maintained the tower was separate from the real estate on which it rested. The tower's character, in C.O.D.'s view, clearly was personalty. As such the sale of the tower did not involve the sale of real estate by the plaintiff.

The Court concludes that the plaintiff's lack of a real estate broker's license does not bar recovery of the commission earned on the sale of defendant's business, radio station WYVA. The Virginia real estate broker's licensing statute is not applicable in the situation described in this action. For the reasons stated above, the plaintiff, CSB, Inc., motion for summary judgment on Count I is GRANTED. Judgment will be entered in favor of plaintiff against defendant C.O.D. in the amount of $23,750.00 with interest thereon at 15% per annum from 2 February 1982 until paid.

And it is so ORDERED.

---

1. A curb on competition with established real estate agents may not be ignored as the basis for the legislation.

2. *See Geneva Investment, Ltd. v. Trafalgar Developers, Ltd.,* 274 So.2d 581, 583–84 (Fla.App. 1973), *cert. disch.* 285 So.2d 593 (Fla.1973), appeal after remand, 305 So.2d 274 (Fla.App. 1974) ("purpose of the real estate licensing act is to protect the public from ... dishonest or unscrupulous real estate operators rather than to permit one party to gain unconscionable advantage by avoiding a just obligation which he has contracted to pay.")

3. The *Weingast* view, which this Court believes would be accepted by a Virginia court, would make the deletion of the option immaterial, in any event.