Syllabus.

# Staunton.

## NICKELS V. MILLER.

### September 17, 1919.

1. SEPARATE ESTATE OF MARRIED WOMEN—*Married Woman's Act of 1877—Marriage Prior to Act—Case at Bar.*—Complainant owned a one-sixth undivided interest in a tract of land, which she inherited from her brother, who died in 1865. Complainant married in 1867 and the coverture continued until 1913. Defendant claimed that complainant after the enactment of the married woman's act of 1877, sold her interest by an executory contract in writing to defendant's vendor and executed a deed to him, which deed, however, was never acknowledged or recorded.

   *Held:* That the estate inherited by the complainant from her brother was a common law estate in which her husband acquired certain rights by her marriage to him before the married woman's act of 1877, therefore both the alleged executory. contract and unacknowledged deed were void; and, that the married woman's act of 1877 did not render them valid.

2. SEPARATE ESTATE OF MARRIED WOMEN—*Married Woman's Act of 1877—Marriage Prior to Act.*—The married woman's act of 1877 (Laws 1876-77, c. 329), which provides that the real and personal property of any female who may thereafter marry and which she shall own at the time of her marriage, or may subsequently acquire, shall be and continue her separate estate, in express terms applies only to the property of women who married thereafter, which was then owned or subsequently acquired. It does not apply, therefore, to a woman who was married many years before the act was adoppted, and whose property was previously acquired.

3. SEPARATE ESTATE OF MARRIED WOMEN—*Married Woman's Act of 1877—Women Previously Married.*—The married woman's act of 1877 (Laws 1876-77, c. 329) empowers a woman who thereafter marries to contract with reference to estate which she owned at the time of her marriage, or might thereafter acquire, but did not enlarge or change the powers of women previously married to contract with reference to their com-

mon law estate which had been previously acquired; nor did it diminish the property rights of their husbands therein which had already been fixed by the common law.

4. SEPARATE ESTATE OF MARRIED WOMEN—*Conveyance, Acknowledgment and Privy Examination.*—The common law estate of a married woman in Virginia could only be conveyed in the method prescribed by statute. Any attempt to contract with reference to such estate was void, unless (as the law was) the privy examination, acknowledgment, and declaration of the wife should first have been taken and certified in the manner prescribed by law; and the certificate of these facts made by the proper official and the deed to which it was annexed delivered to the proper clerk and admitted to record, both as to the husband and wife; then and not until then could the deed operate to pass title from the married woman to the vendee.

5. JOINT TENANTS AND TENANTS IN COMMON—*Conveyance of Undivided Interest—Rights of Grantee.*—When a tenant in common conveys his undivided interest in land held in common, the grantee in the deed is a tenant in common with the other owners thereof, and one who receives a conveyance from one who owns an undivided interest in land, whether acquired by descent or purchase, can acquire thereby no greater right than that which his grantor had.

6. ADVERSE POSSESSION—*Joint Tenants and Tenants in Common.*— In the absence of clear evidence of an ouster and a denial of title, the possession of the owners of five-sixths of an undivided interest in land, cannot be held to be adverse to the owner of the remaining one-sixth.

7. ADVERSE POSSESSION—*Coverture—Running of Statute During Coverture.*—Title by adverse possession cannot be maintained against a woman under coverture from the date of her marriage in 1867 until the death of her husband in 1913. The adverse possession which was claimed not having begun before marriage, the statute did not run during that period.

Appeal from a decree of the Circuit Court of Wise county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*Will H. Nickels,* for the appellant.

*A. N. Kilgore,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

Lucy A. Nickels complains of a decree directing the conveyance to M. J. Miller of one undivided sixth of a tract of land in Wise county, containing about 204 acres, which she inherited from her brother, Samuel L. Gray, who was killed in battle in April, 1865. His heirs at law were one brother and five sisters, one of whom is the appellant.

M. J. Miller has acquired by conveyance from Patrick Hagan the other five-sixths of the land, which is not in controversy here. She claims title under the same conveyance to the one-sixth which Lucy A. Nickels inherited from her deceased brother, and bases her claim upon these grounds: (a) That in the year 1887, Mrs. Nickels entered into a written agreement by which she undertook, for a valuable consideration, which has been paid, to convey her undivided one-sixth interest in the land to Patrick Hagan; (b) that Patrick Hagan took possession of the entire tract in the year 1888; that he sold and agreed to convey to her (M. J. Miller) the whole of the land by contract in writing dated March 22, 1901, and that he executed that contract on March 6, 1906, by conveying the land to her; that she has held possession of it ever since; that, therefore, her title by adverse possession is good; and (c) that there was found among the papers of Patrick Hagan a deed dated March 16, 1888, purporting to be signed by Lucy A. Nickels and her husband, conveying the land to him, which deed, however, has never been acnowledged or recorded.

On the other hand, Lucy A. Nickels denies the title of the appellee, setting up these facts: that she was unmarried at the date of her brother's death; that she afterwards married Stephen J. Nickels on July 30, 1867, and that her cov-

erture continued from that date until her husband died, December 27, 1913; that, therefore, her estate was a common law estate, and hence that any executory contract with reference thereto made by her is void. She also denies that she ever made the alleged contract for the sale of the property, or that she ever either signed or acknowledged the unrecorded deed to Hagan under whom the appellee claims.

From these facts, it is apparent that the estate inherited by the appellant from her brother in April, 1865, is a common law estate, and that unless the married woman's act, which became effective April 4, 1877 (Laws 1876-77, c. 329), is sufficient to authorize her to make an executory contract for the sale of this land, then she still has title to it; and the court erred in directing its conveyance to the appellee.

[1-3] That statute provides that the real and personal property of any female who may thereafter marry and which she shall own at the time of her marriage, or may subsequently acquire, shall be and continue her separate and sole property; and that any such married woman shall have power to contract in relation thereto or for the disposition thereof, and may sue as if she were a *feme sole,* provided that her husband shall join in any contract with reference to real and personal property other than such as may be acquired as a sole trader. It is perfectly clear that there is nothing in this statute which changes or enlarges the rights of this appellant, Lucy A. Nickels, as to the property here involved. It, in express terms, applies only to the property of women who married thereafter, which was then owned or subsequently acquired, whereas this appellant was married many years before the act was adopted, and the property was previously acquired. The act empowers a woman who thereafter marries to contract with reference to estate which she owned at the time of her marriage, or

might thereafter acquire, but did not enlarge or change the powers of women previously married to contract with reference to their common law estate in land which had been previously acquired; nor did it diminish the property rights of their husbands therein which had already been fixed by the common law. Burks' Separate Estates, p. 4.

[4] The cases in Virginia are numerous to the effect that the common law estate of a married woman can only be conveyed in the method prescribed by statute; that any attempt to contract with reference to such estate is void, unless (as the law was) the privy examination, acknowledgment and declaration of the wife shall first have been taken and certified in the manner prescribed by law; and that the certificate of these facts made by the proper official and the deed to which it is annexed shall be delivered to the proper clerk and admitted to record, both as to the husband and the wife; that then and not until then can the deed operate to pass title from her to the vendee. *Rorer's Heirs* v. *Roanoke National Bank,* 83 Va. 589, 2 S. E. 713, 5 Am. St. Rep. 285; *Hairston* v. *Randolph,* 12 Leigh (39 Va.) 445; *Grove* v. *Zumbro,* 14 Gratt. (55 Va.) 501; *First Natl. Bank of Harrisonburg* v. *Paul,* 75 Va. 594, 40 Am. Rep. 740; *Bolling* v. *Teel,* 76 Va. 487; *Hockman* v. *McClanahan,* 87 Va. 33, 12 S. E. 230.

In *Wynn* v. *Louthan,* 86 Va. 947, 11 S. E. 879, the specific performance of a married woman's contract was denied, the court saying this: "The mode prescribed by statute whereby a married woman may part with real estate, or any interest therein, is specific, imperative and indispensable, allowing no deviation; and no defective execution of a deed of a *feme covert* can be set up."

It is perfectly clear, then, that because the estate of Mrs. Nickels is a common law estate which she inherited from her brother in 1865, and in which her husband acquired cer-

tain rights by her marriage to him before the married woman's act of April 4, 1877, both the alleged executory contract and the unacknowledged deed under which the appellee claims, even if genuine, are absolutely null and void.

It is proper to add that the appellant denies emphatically that she ever made any contract whatever with Hagan for the sale of the land, or that she ever signed the deed, and that in our opinion the evidence with reference thereto upon which the appellee relies is inconclusive and insufficient to support the claim of title, even if they had been valid contracts.

The claim of title by reason of adverse possession is also untenable for two reasons:

[5, 6] 1. When a tenant in common conveys his undivided interest in land held in common, the grantee in the deed is a tenant in common with the other owners thereof, and one who receives a conveyance from one who owns an undivided interest in land, whether acquired by descent or purchase, can acquire thereby no greater right than that which his grantee had. *Robinett* v. *Preston*, 2 Rob. (41 Va.) 278; *Cox* v. *McMullin*, 14 Gratt. (55 Va.) 82; *Buchanan* v. *King*, 22 Gratt. (63 Va.) 414; *Woods* v. *Early*, 95 Va. 307, 28 S. E. 374; *Goodloe* v. *Woods*, 115 Va. 540, 80 S. E. 108; *Virginia Coal & Iron Co.* v. *Hylton*, 115 Va. 418, 79 S. E. 337; Ann. Cas. 1915 A, 741; *Adams* v. *Briggs Iron Co.*, 7 Cush. (Mass.) 361. So that in the absence of clear evidence of an ouster of Mrs. Nickels and a denial of her title, the possession of Hagan and the appellee, as the owner of the other five-sixths of the land, cannot be held to be adverse to her as the owner of the other one-sixth thereof. *Stonestreet* v. *Doyle*, 75 Va. 356, 40 Am. Rep. 731; *Pillow* v. *Southwest, etc., Co.*, 92 Va. 144, 23 S. E. 32, 53 Am. St. Rep. 804.

[7]   2. In as much as the appellant was under coverture from the date of her marriage, July 30, 1867, until the death of her husband, December 27, 1913, and the adverse possession which is claimed not having begun before the marriage, the statute does not run during that period.   It is, therefore, manifest that title by adverse possession, if the other requisites therefor existed, cannot be maintained against her.

For the reasons indicated, the decree complained of, so far as it affects the rights of Lucy A. Nickels, will be reversed, and the bill will be dismissed as to her.

*Reversed.*