## Staunton

ROANOKE MARBLE AND GRANITE COMPANY, INC. V.
STANDARD GAS AND OIL SUPPLY COMPANY, INC.

September 12, 1930.

Absent, Campbell and Holt, JJ.

*Cocke, Hazlegrove & Shackelford,* for the appellant.

*Woods, Chitwood, Coxe & Rogers* and *Murray A. Foster,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

The Roanoke Marble and Granite Company, hereinafter referred to as the lessor, is the owner of a parcel of land on Jefferson street in the city of Roanoke, which on the 5th day of April, 1926, it leased to a partnership composed of John L. Laughon and S. E. Wood for a period of five years, with an option to extend the lease upon certain conditions.

In the lease, it was agreed between the parties that the lessees should use the leased land for the sole purpose of conducting and operating a filling station for the sale of gasoline, motor oil and other commodities and accessories generally used for automobiles and commonly sold or handled by filling stations. Under the terms of the lease, the lessees had the right, by and with the consent and approval of the lessor, to erect and install in and upon the leased premises, buildings, structures, tanks, improvements, equipment and appliances.

Pursuant to this lease, the lessees installed in and attached to the freehold and under the surface of the premises a large gasoline supply tank of 12,500 gallons capacity. By the terms of the lease, the lessor was required to, and did, contract with the Norfolk and Western Railway Company to install a siding leading to the leased premises, in order that gasoline might be purchased in carload lots at a lower price and pumped directly from the tank car to the gasoline supply tank, and from it piped directly to the surface pumps. This 12,500 gallon gasoline supply tank was connected with pipes leading to the railroad siding.

S. E. Wood, one of the lessees, assigned his interest in the said lease to his partner, John L. Laughon, who was recognized as the sole lessee by the lessor. On the 14th day of December, 1927, John L. Laughon was adjudicated a bankrupt. Laughon's trustee in bankruptcy disclaimed any interest in "accessories, furnishings, fixtures, machinery, appliances, equipment, etc.," erected by the lessees and used in connection with the filling station. The trustee in bankruptcy, after making the disclaimer, sold the lease as an asset of the estate of the bankrupt, John L. Laughon, to the Standard Gas and Oil Supply Company, the appellee, and the lessor recognized it as an assignee of the said lease.

Approximately one year later, in April, 1929, the lessor was informed that the appellee was removing, or attempting to remove, the 12,500 gallon supply tank installed under the surface of the leased premises and connected with pipes as described above. The lessor immediately instituted suit, in the Hustings Court of the city of Roanoke, praying that the appellee be enjoined and restrained from removing the said tank. A temporary restraining order was granted; the appellee filed a demurrer and answer to the bill, and later moved to have the temporary injunction dissolved. The cause was heard on the bill, the demurrer, the answer, the motion to dissolve, and affidavits filed in support of the allegations in the bill. The lower court held that the lessor had an adequate remedy at law, dissolved the injunction, and dismissed the suit.

From this decree the case is here on appeal.

It is contended by the Standard Gas and Oil Supply Company, hereinafter referred to as the appellee, that the gasoline tank in question is a trade fixture and that the appellee has a right to remove it at any time within the term of the lease. If it were conceded that, in the absence of any agreement upon the subject, the tank was a trade fixture and that it was removable during the term by the tenant,

how is that right, or privilege, affected by the provisions of the lease? The pertinent parts of the lease are as follows:

"1. The lessees shall use the lands hereinabove described for the sole purpose of maintaining and operating a filling station thereon for the sale of gasoline, motor oils, and the other commodities and accessories generally used for automobiles and now commonly sold or handled by filling stations. Subject at all times to the approval of the lessor as to the location, kind and nature, the lessees shall have the right to build, erect, construct, and maintain upon the premises above described such buildings, tanks, pumps, driveways, storehouses, repair shops, and other things as may be reasonably necessary for the conduct of the business contemplated.

"7. All buildings, tanks, pumps, fixtures, and improvements of every kind and description erected upon the premises hereby leased shall be the property of and belong exclusively to the lessees free from any liens and encumbrances, and upon the termination of this lease all such structures, buildings, improvements, fixtures, tanks, pumps and appliances installed, constructed, or erected upon said premises by the lessees shall be the property of and belong exclusively to the lessor.

"8. Any and all buildings, structures, tanks, improvements, equipment, and appliances erected, constructed, or installed upon the premises hereby leased shall as to kind, nature, description and location be subject to the approval of the lessor."

A concise analysis of the above provisions may be stated thus: (1) The sole use of the premises contemplated by the parties was the erection and maintenance of a filling station, with the installation of the necessary equipment therefor. (2) The lessees were given the right to construct and maintain buildings, tanks, pumps, driveways, storehouses and repair shops, and other things reasonably neces-

sary for the operation of the filling station. (3) The lessees, before locating any of the above-mentioned structures and appliances, had to obtain the approval of the lessor, not only of the spot on which they were to be located on the premises, but the kind, nature and description of the same were also to be approved by him. (4) When this approval of the lessor was obtained and the necessary fixtures and appliances erected and installed on the premises, they were for the use of the lessees during the term of the lease. (5) On the termination of the lease, such buildings, structures, tanks, improvements, equipment and appliances so erected or installed became the absolute property of the lessor.

The appellee contends that the lessor has no interest in the tank and other appliances unless such tank and appliances are on the leased premises at the termination of the lease. This contention is based on the construction of the first four lines of paragraph 7, namely, "All buildings, tanks, pumps, fixtures, and improvements of every kind and description erected upon the premises hereby leased shall be the property of and belong exclusively to the lessees." This clause, standing alone and separated from other parts of the contract, gives color to that claim. The appellee recognizes the settled rule of construction, namely, that contracts must be construed so as to give effect to every part thereof, but contends that the first clause of paragraph 7 is in such conflict with the last clause that it is impossible to reconcile the two, unless the two are construed to mean that during the term of the lease all buildings, equipment, fixtures, etc., on the premises are the absolute property of the lessee and that at the termination of the lease all such buildings, tanks, fixtures, etc., remaining on the property are to become the property of the lessor. To this construction of the lease we cannot agree.

A careful examination of the entire lease, including paragraph 7, shows that the parties intended two things.

(1)   That the lessees should erect or install upon the leased premises the buildings, structures, tanks, improvements, equipment and appliances enumerated in the lease, and at the time of the erection or installation such property should be owned by the lessees free from any liens or encumbrances. (2)   After the erection and installation of such enumerated improvements, their beneficial use was in the lessees during the term of the lease, a reversionary interest in the lessor, with the right of possession and ownership to become absolute on the termination of the lease.   In other words, when all the provisions of the lease are construed together, as they must be, the only reasonable construction that can be placed upon paragraph 7 is that the tank in question, along with the buildings, pumps, driveways, storehouses, repair shops, etc., erected and installed upon the premises by the lessees were for the benefit of the lessees during the term and to be surrendered to the lessor, as a part of a completed filling station, at the end of the term.   Under the appellee's construction of the lease, the lessees could remove, not only the tank in question, but all the other structures and appliances necessary for the maintenance of a filling station the next day after they were installed, and thus defeat the very purpose of the lease.

In *Tunis Co.* v. *Dennis Co.*, 97 Va. 682 at page 686, 34 S. E. 613, 614, it is said:

"It is well settled that by agreement the parties may fix the character and control the disposition of property, which, in the absence of such a contract, would be held to be a fixture, where no absurdity or general inconvenience would result from the transaction.   2 Woodfall Land. & Tenant, 637 (1 Am. Ed. from 13th Eng. Ed.); 3 Wait's Actions & Defenses, page 372, section 4; Taylor's Land. & Tenant, section 554; Wood's Land. & Tenant, section 531.

"The general rule is that buildings erected by the tenant on the leased premises, pursuant to a covenant in the lease,

are not removable as trade fixtures unless the lease expressly or impliedly reserves to the lessee the right to remove them. *Peirce* v. *Grice*, 92 Va. 763, 24 S. E. 392; *Deane* v. *Hutchinson*, 40 N. J. Eq. 83, 2 Atl. 292. See, also, *Gett* v. *McManus*, 47 Cal. 56; *Mayor, etc.* v. *Brooklyn Fire Ins. Co.*, 41 Barb. (N. Y.) 231; *Same* v. *Hamilton Ins. Co.*, 10 Bosworth (23 N. Y. Super. Ct.) 537.

"It is said to be an essential quality of all removable erections that they shall have been made under such circumstances as show that the tenant made them of his own volition and for his own benefit, intending that they should remain his property, and not in fulfilment of a duty or obligation which he owed the lessor. *Deane* v. *Hutchinson*, *supra;* Ewell on Fixtures, pages 88–9."

In 26 C. J., 717, we find the law stated thus: "When it is stipulated that articles or structures, ordinarily removable by the tenant, shall belong to the landlord on the expiration of the term, the latter, it seems, acquires a vested interest in such articles or structures immediately on their annexation, which interest is capable of transfer. The tenant cannot remove the article before the expiration of the term nor can he affect the landlord's rights by undertaking to transfer the fixtures to a third person. The removal of things annexed or erected under such a stipulation has been regarded as waste but elsewhere it was said that for such removal the remedy is by action on the contract rather than by an action for waste."

The only remaining question to be determined is whether or not the interest of the lessor in the tank is such that equity will enjoin its removal from the leased premises. "When the bill states facts which show that a threatened trespass, if not prevented, will result in irreparable damage, or is in character and tendency destructive to the inheritance or to that which gives it its chief value, an injunction will be granted, notwithstanding a dispute, or even pending

litigation as to title. *Morrison* v. *American Association*, 110 Va. 91, 93, 65 S. E. 469; *Woolfolk* v. *Graves*, 113 Va. 182, 69 S. E. 1039, 73 S. E. 721."

█ The bill in the present case alleges that if the tank is removed from the premises "it would tear up and disfigure the freehold, leave unsightly holes and excavations therein, and greatly injure the freehold and detract from the value and appearance thereof, and do irreparable injury and damage * * *." The purpose of the lease was for the lessees to take a vacant lot in the city of Roanoke, install and erect thereon the buildings, structures, tanks and other appliances necessary and needful for the maintenance of a filling station, and at the end of the term return to the lessor the premises with a gasoline station thereon fully equipped and ready for occupancy. To permit the tank to be removed under such circumstances would be "* * * in character and tendency destructive to the inheritance or to that which gives it its chief value."

██ We recognize the fact that the appellee in the instant case is not a trespasser, but in attempting to remove the tank under the circumstances enumerated he is guilty of waste, and it is claimed that section 5506 of the Code of 1919, gives to the lessor the right to bring an action of waste against his tenant after the acts have been committed. But an action authorized by the statute is not the exclusive remedy. It was held as early as 1808 in the case of *Harris* v. *Thomas*, 1 H. & M. (11 Va.) 18, that "an injunction to stay waste is generally a proper subject for the jurisdiction of a court of equity, notwithstanding an act of assembly gives a remedy at law." This case was cited with approval in the case of *Fleenor* v. *Sproles*, 148 Va. 503, 508, 139 S. E. 286.

█ Our conclusion is that where, by the lease, the tenant is given the right to install a large storage tank under the surface of the ground, connected by pipes with

the railroad siding and surface pumps, to be used by him in maintaining a filling station during the term of the lease, and on the termination thereof such storage tank is to become, along with other buildings and structures, the property of the lessor, it partakes of the nature of a permanent fixture, and equity will restrain its removal.

The decree of the lower court will be reversed and an order will be entered restraining the appellee from removing the tank from the leased premises, in accordance with the prayer of the appellant's bill.

*Reversed.*