# Chosar Corporation, et al.

## v.

# Beulah Owens, et al.

Record No. 850699

June 17, 1988

Present: All the Justices

*S. Strother Smith (William H. Drake,* on brief), for appellants.
*Benjamin F. Sutherland* for appellees.

STEPHENSON, J., delivered the opinion of the Court.

The principal questions in this appeal are (1) whether mining of coal owned by cotenants without the consent of all owners constitutes waste and the exclusion of the interests of the nonconsenting owners entitling them to injunctive relief, and (2) if such mining does constitute waste and the exclusion of the nonconsenting own-

ers' interests, whether the consenting coal owners may permit a third party to transport coal from adjoining land through an underground passageway created by such mining, over the objection of the nonconsenting owners.

In this chancery cause, Beulah Owens and others[1] (collectively, Owens) seek to enjoin Chosar Corporation and William H. Drake (collectively, Chosar) from mining coal in which Owens owns an undivided fractional interest and from hauling coal from the land of a third party through an underground passageway created by such mining. The trial court ruled that "the mining of coal by Chosar and its lessees . . ., without the consent of all cotenants, is the commission of waste, the exclusion by [Chosar] of [Owens] from their interest in the property, and an appropriation thereof to [Chosar]." The court also ruled that fewer than all cotenants could not permit the haulage of coal, produced from other lands, through underground passages carved out of the jointly-owned coal. Consequently, the trial court permanently enjoined Chosar from such mining and haulage, ordered an accounting, and referred the cause to a special commissioner. This appeal ensued pursuant to Code § 8.01-670(B).

The relevant facts are undisputed. The coal in controversy lies within a 61-acre tract of land in Dickenson County (the Willis tract). The coal is owned by the heirs and successors in title of Andrew and Crissie Willis (collectively, Willis). At present, approximately 90 persons own undivided interests in the coal.[2]

Approximately 85 percent of the co-owners executed leases transferring to Chosar "all their right, title and interest" in all the merchantable seams of coal on the Willis tract. The leases provided for a royalty that is the greater of two dollars per 2,000 pounds of coal or eight percent of the price obtained from the coal. The leases also granted Chosar the right to transport coal from adjoining lands through underground passageways on the leased premises.

---

[1] The other complainants are: Willie Willis, Trella Boyd, Neville Willis, Betty J. Garrett, Annisteen Burchett, Betty L. Willis, Darlene J. Anderson, Mary A. Lindsey, Duster Willis, Ercel Ratliff, Estes Ratliff, Phyllis J. Prater, Imel R. Jackson, Foster L. Ratliff, George Ratliff, Bobby J. Ratliff, Rodney R. Ratliff, Jack Ratliff, David L. Ratliff, Carley Sluss, Madeline Shortridge, Patricia Epling, James Archie Sluss, Danny Sluss, and Sonja McCowan.

[2] The parties concede, however, that the exact number and identity of the owners have not been established.

The most valuable coal on the Willis tract is the "Splashdam seam," which is several hundred feet beneath the surface of the land. Chosar subleased the right to mine the Splashdam seam to coal operators at a royalty rate of 14 percent of the selling price.

Because the Splashdam seam does not outcrop on the Willis tract, access for underground mining had to be achieved from other lands. Consequently, Chosar obtained a lease from Pittston Resources, Inc. (Pittston), to mine coal from land owned by Pittston that adjoins the Willis tract. Thus, a portal was established at the outcropping of the Splashdam seam on the Pittston tract, approximately 200 feet from the Willis tract's boundary.

The mining operation proceeded from the portal to the Willis tract, thence through the Willis tract to Pittston's land on the opposite side. Thereafter, coal mined from Pittston's property was transported underground through the passageways on the Willis tract and thence to the surface. The passageways on the Willis tract were created by the mining operation.

█ Although a cotenant may transfer to another his undivided interest in the common property without the consent of his cotenants, *see Va. Coal and Iron Co.* v. *Hylton*, 115 Va. 418, 421-22, 79 S.E. 337, 338 (1913), nonconsenting cotenants are not bound by an agreement purporting to lease the entire property or any specific portion thereof, *Phillips* v. *Dulany*, 114 Va. 681, 683, 77 S.E. 449, 449 (1913). A lessee claiming under such a lease acquires rights no greater than those of his lessor. *See Nickels* v. *Miller*, 126 Va. 59, 64, 101 S.E. 68, 70 (1919). Consequently, our inquiry here necessarily focuses upon the extent of the consenting cotenants' rights in the common coal lands.

█ We first consider whether Chosar's mining of the coal without the consent of all owners constituted waste. Generally, waste is defined as "[a] destruction or material alteration or deterioration of the freehold, or of the improvements forming a material part thereof, by any person rightfully in possession, but who has not the fee title or the full estate." *Black's Law Dictionary* 1425 (5th ed. 1979). At common law, a cotenant was not liable to his cotenants for waste. 2 R. Minor, *The Law of Real Property* § 879 (2d ed. 1928). The common law, however, has been changed by statute: "If a tenant in common, joint tenant or parcener commit waste, he shall be liable to his cotenants, jointly or severally, for damages." Code § 55-212. Injured parties also have

a remedy at law for waste committed by "any tenant of land . . . while he remains in possession." Code § 55-211.

Notwithstanding these statutory remedies, a court of equity, in a proper case, may grant an injunction to prohibit waste. *Marble Co.* v. *Standard Gas Co.*, 155 Va. 249, 257-58, 154 S.E. 518, 521 (1930); *Fleenor* v. *Sproles*, 148 Va. 503, 508, 139 S.E. 286, 288 (1927); *Harris* v. *Thomas*, 11 Va. (1 Hen. & M.) 17, 18 (1806). What constitutes waste sufficient to entitle the injured party to injunctive relief depends upon the circumstances of each particular case. *Findlay* v. *Smith*, 20 Va. (6 Munf.) 134, 142 (1818). For example, the cutting of timber in some instances may constitute waste, while in other cases it may be a benefit. *Macaulay's ex'or* v. *Dismal Swamp Land Co.*, 41 Va. (2 Rob.) 507, 527-28 (1843); *Findlay*, 20 Va. (6 Munf.) at 148-49 (Roane, J., dissenting).

In the case of tenants in common, no tenant can change or alter the common property to the injury of his cotenants without their consent. *Woods* v. *Early*, 95 Va. 307, 312, 28 S.E. 374, 376 (1897). Injunctive relief against a cotenant is proper where the injury is material, continuing, and not adequately remedied in damages. *Id.* at 314-15, 28 S.E. at 376-77.

In the present case, the extraction of coal from the Willis tract is a material and continuing destruction of the very substance of the mineral estate. The consenting cotenants had no right to remove coal from the common property without the consent of Owens. Consequently, the consenting cotenants could not authorize Chosar to mine coal from the property without the consent of the other cotenants. We conclude, therefore, that the trial court correctly ruled that Chosar's mining within the Willis tract constituted the commission of waste. Because continued mining would cause irreparable harm to Owens, we further conclude that the trial court properly enjoined Chosar from committing further waste.

We next consider whether Chosar's mining of the Willis tract excluded the nonconsenting cotenants from their interest in the property. At common law, one cotenant who used the common land exclusively was not required to account to the other cotenants unless his use resulted in an ouster or exclusion of his cotenants. *Fry* v. *Payne*, 82 Va. 759, 761, 1 S.E. 197, 199 (1887). Now, however, an accounting may be had against a cotenant "for re-

ceiving more than comes to his just share or proportion." Code § 8.01-31.

In his use of the common property, a cotenant cannot appropriate to himself the entire estate, *Dotson* v. *Branham*, 197 Va. 674, 678, 90 S.E.2d 783, 786-87 (1956), or unilaterally partition the property by appropriating to himself any specific portion of the property, *Cox* v. *McMullin*, 55 Va. (14 Gratt.) 82, 90 (1857). If a cotenant desires partition, he may seek relief under Code § 8.01-81. That section also authorizes courts to compel partition of "mineral rights east and south of the Clinch River."

Significantly, however, courts had no authority to partition mineral rights until 1964. In that year, the General Assembly amended the predecessor to Code § 8.01-81 to permit the partition of mineral rights "east of the Blue Ridge mountains." Acts 1964, c. 167. Subsequently, the General Assembly again amended that section, empowering courts to partition mineral rights "east and south of the Clinch River." Acts 1968, c. 412.

Thus, by negative implication, Code § 8.01-81 prohibits the partitioning of mineral rights west and north of the Clinch River, which is where the mineral rights in the Willis tract are located. If a court has no authority to partition mineral rights west and north of the Clinch River, *a fortiori*, such mineral rights cannot be partitioned without the consent of all cotenants.

In the present case, however, Chosar's conduct of mining operations was such an appropriation of a specific portion of the Splashdam seam, and, in effect, a unilateral partitioning of the mineral estate. Thus, we conclude that the trial court correctly ruled that Chosar's mining excluded the nonconsenting cotenants from their interests in the property.

Similarly, the transporting of coal from Pittston's adjoining land through the underground passageway created in the Willis tract by Chosar's mining constitutes an exclusion of the nonconsenting owners' interest in the property. Moreover, the underground passageway is a product of the waste of the estate. Allowing Chosar to use the tunnel to transport coal would permit Chosar to profit from its own wrongdoing. We conclude, therefore, that the trial court properly enjoined Chosar from further haulage.

We have considered Chosar's other assignments of error and find them to be without merit. Accordingly, we will affirm the de-

crees of the trial court and remand the cause for further proceedings consistent with the views expressed herein.

*Affirmed and remanded.*

THOMAS, J., dissenting.

This is an extremely important property case which, in my opinion, has been wrongly decided by the majority in a decision that could have dire adverse consequences for the Commonwealth. The basic dispute is over the mining of coal. The owners of 85% of the coal in question want to mine. The owners of the remaining 15% of the coal do not want to mine. As the majority acknowledges, because of Code § 8.01-81, the dispute between the owners cannot be resolved by a partition suit. Thus, the owners are locked in battle with no way out. The result of the majority opinion is that the rights of the 15% who do not want to mine have been made paramount to the rights of the 85% who want to mine. Indeed, the principle of the majority opinion is such that if the mineral rights here in dispute were jointly owned by 1,000,000 people and 999,999 of these co-owners wanted to mine, one solitary co-owner could enjoin all mining. The majority's decision is neither required nor justified by existing Virginia law; moreover, it is not sound in principle or logic.

Two issues were presented to the trial court. The first was whether Chosar, the 85% owner of the mineral rights in the Willis tract, committed waste by mining coal from the property. The second was whether Chosar committed a trespass by hauling coal belonging to third parties through tunnels in the Willis tract which had been created by the mining that was claimed to be waste. The trial court ruled against Chosar on both points. With regard to mining, the trial court wrote in a letter opinion as follows:

> [T]he Court is of the opinion that this case is on all fours with *Dotson* v. *Branham*, 197 Va. 674, and therefore, the defendant's [sic] are enjoined from mining the coal as said coal is not covered by the lease as to all of the owners of undivided interest and therefore, the mining of the coal by the defendant is a trespass as to the rights of the complainants and amounts to the commission of waste.

With regard to haulage, the trial court ruled as follows: "The defendants . . . are hereby restrained and enjoined from hauling through the underground passages in the 61 acre tract of land involved in this case, any coal produced from lands other than the 61 acre tract."

*Dotson v. Branham*, 197 Va. 674, 90 S.E.2d 783 (1956), is the sole legal authority relied on by the trial court in deciding the instant case. As set forth above, the trial court was of the view that Dotson was "on all fours" and was thus controlling. Significantly, however, though it affirms the trial court's decision, the majority pays little attention to *Dotson*. In my view, *Dotson* was handled so gingerly because it is *not* on all fours with the instant case and is therefore *not* controlling.

In *Dotson*, the majority interest holders sought to enjoin mining by a minority interest holder. The property in dispute in *Dotson* was a 12.59-acre parcel of a larger 89-acre tract which originally had been owned by Logan S. Mullins and which passed to his four children when Mullins died. Each child took an undivided one-fourth interest in the coal, oil, gas and minerals on the 89-acre tract. One of the children, John G. Mullins, and his wife, conveyed to B. E. Dotson and Kenneth Dotson fee simple ownership in the above mentioned 12.59-acre parcel. Although John owned only an undivided interest in the property, the conveyance to the Dotsons was described by metes and bounds. The Dotsons then leased the coal mining rights on the parcel to W. M. Kelly.

At the time of the conveyance to the Dotsons, there was only one acre of coal left to be mined on the entire 89-acre tract. This coal was located within the boundaries of the 12.59 acres that had been conveyed by metes and bounds to the Dotsons. Kelly contended that in reliance upon the Dotson lease, he had opened the mine and was in the process of mining. The Dotsons claimed all the coal on the 12.59-acre parcel and the right to lease it and to receive royalties. The trial court in *Dotson* found that the Dotsons and Kelly had mined part of the 12.59 acres "and would continue to mine it exclusively for their own benefit and in disregard of the rights of their co-owners." *Id.* at 677, 90 S.E.2d at 786. The trial court in *Dotson* enjoined defendants from mining and removing the coal on the parcel without the consent of their co-owners, so long as the interests in said coal remained undivided.

The precise issue in *Dotson* was "whether it was proper to grant an injunction against them as owners of an undivided one-fourth

interest in the minerals, whereas they were grantees of all the minerals in the deed from one who owned only an undivided interest therein." *Id.* Put another way, was it proper to enjoin the Dotsons from appropriating for themselves all the coal from the only remaining deposit when the Dotsons' ownership was limited to an undivided interest in that coal. We held that under these circumstances the injunction was proper.

> Clearly the injunction was proper. It is shown beyond controversy that the Branhams owned an undivided three-fourths of this coal. That was shown by the records which the defendants testified they had examined. The defendants owned only an undivided one-fourth of this coal. That was all that their grantors owned and all they could convey to the defendants. Those grantors could not by their deed to the defendants convey or diminish the property of the Branhams. *The defendants did not contend that they were mining for the benefit of themselves and the Branhams. They asserted in their pleadings and in their evidence that they owned all this coal and that they were mining it for themselves to the exclusion of their co-owners.* They had, of course, no right to exclude their co-owners from their interest in the property and appropriate all of it to themselves.

*Id.* at 678, 90 S.E.2d at 786-87 (emphasis added).

In the instant appeal, the facts are significantly different. Here, Chosar has never claimed exclusive right to all the coal from the mine in question. Chosar has always acknowledged the ownership interest of its co-owners. Further, Chosar attempted to leave unmined sufficient coal to represent the interest of the 15% who did not want to mine and Chosar also set up a fund into which it made royalty payments for the benefit of those who had refused to mine. Unlike the situation in *Dotson*, Chosar never contended that it had a right to all the coal and all the proceeds from the sale of the coal.

In my opinion, *Dotson* is distinguishable on its facts and is thus not controlling. Moreover, the other cases cited by the majority do not address the precise issue raised in this appeal. I would treat the present problem as a case of first impression in the Commonwealth and establish a rule that protects the property rights of both the minority and the majority.

Although *Dotson* was the only legal authority relied on by the trial court in ruling against Chosar, it is apparent from the record that part of the trial court's rationale was that Chosar could have protected its rights by filing a partition suit. At one of the hearings the trial court stated as follows:

They had an adequate remedy before they tried to obtain the lease . . . . There wasn't anything to keep you from filing a partition suit and whether the statute prohibits the partition or whether or not the fact that you don't know how to partition coal because of the nature of it not being discoverable just from a view of the surface, the Court then could have ordered a sale.

Of course, as the majority concluded and as I agree, partition is the very thing that Code § 8.01-81 does not permit in this situation. Thus, the trial court was wrong to conclude that Chosar had "an adequate remedy."

With regard to the issue of trespass and waste, I would consider the totality of the circumstances, including the fact that coal can be enjoyed only through extraction and is valuable only as a result of extraction. *See* 1 Kuntz, *A Treatise on the Law of Oil and Gas* § 5.3 (1987). Moreover, I would consider the fact that an overwhelming majority of the interest holders want to mine yet are prohibited from partitioning the property. Then I would adopt a rule such as that which is said to be the majority rule regarding extraction of oil and gas:* "Under the rule which is applied in the majority of states which have decisions on the point, a cotenant in the fee may enter to explore for and produce oil and gas without consent of his cotenants. *He must, however, account to his cotenants for their proportionate share of production.*" *Id.* (citations omitted) (emphasis added) . By such rule, in the special class of cases represented by the instant appeal, I would undertake to prevent a tyranny of the minority interest holders. Without such a rule, the majority's interest in otherwise valuable mineral rights could be absolutely destroyed on the whim of one recalcitrant coowner.

---

* Although the rule I would adopt derives from the law of oil and gas, which substances have characteristics different from coal, it is noteworthy that the *Dotson* decision was itself based on oil and gas principles. *See Dotson*, 197 Va. at 679, 90 S.E.2d at 787.

The portion of the majority opinion which concerns the haulage issue does not even address the issue which was presented to this Court. That issue is whether Chosar trespassed upon its own property when it transported a third party's coal through passageways located in the Willis tract. The facts are that the haulage does nothing to damage the mineral estate.

I cannot understand, and the majority does not explain, how a co-owner of property can trespass on his own property simply by moving through that property. The haulage issue does not involve a question of entering the property to commit waste. Hauling coal through tunnels is not the same as removing coal from the property. The theory of trespass in the context of waste is that not even a co-owner of property will be permitted to enter the property to commit waste. In that limited situation, the law says that even the co-owner has no right to be on the property. But where no act of waste is being committed, the co-owner's original rights to enter his property will obtain.

The majority has, by brute force, simply declared that because it was waste to extract coal in the first instance, it is trespass to move through the tunnels created by the original extraction even if no more extraction is being done. I disagree with the first proposition. But even if it were true, the second proposition does not follow from the first. I would reverse the judgment of the trial court on both issues.