## CIRCUIT COURT OF BUCHANAN COUNTY

Edith Fields Yuhasz et al.

v.

Black Watch/Black Diamond
Coal Corp. et al.

Case No. 176-92

BY JUDGE NICHOLAS E. PERSIN

January 19, 1993

The Court sustains the Demurrer filed by the Defendants in this case. The Defendants' reliance upon the case of *Chosar Corp. v. Owens*, 235 Va. 660 (1988), in the opinion of this Court is controlling. In *Chosar, supra*, at p. 665, the Supreme Court stated:

> Significantly, however, courts had no authority to partition mineral rights until 1964. In that year, the General Assembly amended the predecessor to Code § 8.01-81 to permit the partition of mineral rights "east of the Blue Ridge mountains." Acts 1964, c. 167. Subsequently, the General Assembly again amended that section, empowering courts to partition mineral rights "east and south of the Clinch River." Acts 1968, c. 412.
>
> Thus, by negative implication, Code § 8.01-81 prohibits the partitioning of mineral rights west and north of the Clinch River, which is where the mineral rights in the Willis tract are located. If a court has no authority to partition mineral rights west and north of the Clinch River, *a fortiori*, such mineral rights cannot be partitioned without the consent of all co-tenants.

You will note that this Court's letter opinion of December 18, 1985, in the case of *Letha Boyd, et al. v. Fanning Boyd, et al.*, precedes the Supreme Court's decision in the *Chosar* case of June 17, 1988. Also, from a review of Complainants' pleadings, no constitutional issue is alleged.

August 29, 1994

Section 8.01-81 of the Virginia Code states:

> Tenants in common, joint tenants, executors with the power to sell and co-parceners of real property, *including mineral rights east and south of the Clinch River*, shall be compellable to make partition and may compel partition but in the case of an executor only if the power of sale is properly exercisable at the time under the circumstances; and a lien creditor or any owner of undivided estate in real estate may also compel partition for the purpose of subjecting the estate of his debtor or the rents and profits thereof to the satisfaction of his lien. Any Court having general equity jurisdiction shall have jurisdiction in cases of partition; and in the exercise of such jurisdiction may take cognizance of all questions of law affecting the legal title that may arise in any proceedings between such tenants in common, joint tenants, executors with the power to sell, co-parceners and lien creditors. All partitions of mineral rights heretofore had are hereby validated.

By letter opinion of January 19, 1993, the Court sustained the Defendants' Demurrers to the Complainants' action, wherein they sought to partition or sell their interests in the 80-acre Splashdam Seam of coal, situate north and west of the Clinch River. Thereafter, the Complainants were permitted, over the Defendants' objection, to file amended pleadings posing this issue: "Is § 8.01-81, *supra*, unconstitutional if construed to permit the partition of mineral rights east and south of the Clinch River and to prohibit the partition of mineral rights north and west of the Clinch River?"

The Defendants assert that the decision set forth in *Chosar v. Owens*, 235 Va. 660, 370 S.E.2d 305 (1988), embodied a ruling by the highest court of the Commonwealth on this issue. Because *Chosar, supra*, did not present a direct challenge to the constitutionality of § 8.01-81, the Court requested Briefs which are filed and are made part of the record of this case.

The history relating to the law of partition and the analysis of the law relating thereto set forth in the Complainants' Brief is adopted by this Court. In particular, the Court relied heavily on the conclusion found in the report of J. Thomas Fowlkes, who served as Special Commissioner in the case of *Garnett Cooper, et al. v. Leonard P. Cole, et al.*, Case No.

(183-72), filed in the Buchanan County Circuit Court in 1972. In that case, the Special Commissioner concluded that § 8.01-81 did not bar property owners with partial interests in mineral lands from a partition action on lands lying north and west of the Clinch River. This conclusion is the result of a careful, logical, well-reasoned, and detailed analysis of the very issue presented in this case.

The Court is mindful of the presumption that all statutes enacted by the General Assembly are constitutional and that any reasonable doubt as to that issue must be resolved in favor of their validity. The numerous cases cited by the Defendant enunciating these principles are not controlling in the legal interpretation of this particular statute. When the General Assembly enacted § 8.01-81, it created special legislation, acted arbitrarily, and unreasonably separated persons and places.

Coal deposits, in place, have no economic benefit to the owners unless they can be profitably mined. If the intention of the General Assembly was to prohibit owners with undivided interests in coal from seeking partition of mineral land, or the sale thereof, north and west of the Clinch River, such language should have been clearly stated in the statute.

As noted in the Complainants' Brief at pages 16 and 17, the Complainants, as owners or lessees of undivided interests in the Splashdam Seam of coal are denied the same rights provided to others having a similar interest in coal located east and south of the Clinch River. This result must have a reasonable basis for exclusion. Such a basis is not apparent to the Court. Therefore, this Court hereby declares § 8.01-81 of the 1950 Code of Virginia, as amended, to be in violation of the Constitution of Virginia under Article IV, Section 14, and Article IV, Section 15.

Because the Report of Special Commissioner Fowlkes greatly influenced the Court's decision, that portion of the report relevant to the issue under consideration is attached to this opinion and made a part hereof.

Counsel for the complainants is hereby directed to prepare the Decree of the Court setting forth the declaration of unconstitutionality regarding § 8.01-81.

*Appendix*

*Partition of the Coal and Mineral Interests.* The question to be resolved is whether the partition of the estate's mineral interests is legally compel-

lable and, if so, whether the partition of those coal and mineral interests can be conveniently made or whether the sale of the same is necessary.

The partition statute, which was last amended in 1968, provides as follows:

> Tenants in common, joint tenants, and co-parceners of real property, including mineral rights east and south of the Clinch River, shall be compellable to make partition; and a lien creditor or any owner of undivided estate in real estate may also compel partition for the purpose of subjecting the estate of his debtor for the rents and profits thereof to the satisfaction of his lien. Any court having general equity jurisdiction of the county or corporation wherein the estate, or any part thereof, is, shall have jurisdiction in cases of partition; and in the exercise of such jurisdiction may take cognizance of all questions of law affecting a legal title that may arise in any proceedings between such tenants in common, joint tenants, co-parceners and creditors. All partitions of mineral rights heretofore had are hereby validated.

Va. Code Ann. § 8-690.

A brief historical review of the right to partition mineral lands is necessary in order to bring this problem into perspective. At common law, only parceners were compellable to make partition, and by the statutes of 31 Hen. VIII, c. 1, and 32 Hen. VIII, c. 32, joint tenants and tenants in common were given that right. See 2 *Minor on Real Property*, Section 889 (Ribble Ed.). It is provided that those Acts of Parliament, being of a general nature and enacted prior to the fourth year of the reign of King James I, are in effect in Virginia unless inconsistent with the Virginia Constitution or the Acts of Assembly. Va. Code Ann. § 1-11. In 1786, the General Assembly in Virginia afforded compulsory partition to joint tenants and tenants in common. See 1 Revised Code of 1819, Chapter 98, 61. In 1830, the basic provision of the partition statute was enacted to provide: "Tenants in common, joint tenants, and co-parceners shall be compellable to make partition . . . ." Code of Virginia, 1849, Title 34, Chapter 124, Section 1. This provision survived in that form until 1964, when the General Assembly amended the provision to read that "tenants in common, joint tenants, and co-parceners of real property, *including mineral rights east of the Blue Ridge Mountains* shall be compellable to make partition." Acts of Assembly, 1964, Chapter 167. In 1968 the statute was again amended to read as follows:

> Tenants in common, joint tenants, and co-parceners of real property, *including mineral rights east and south of the Clinch River* shall be compellable to make partition.

Va. Code Ann. § 8-690. (Emphasis added.)

As a preliminary matter, it should be pointed out that there appears to be no reason in principle for denying the right to partition a mineral estate under the general partition statute, since it has long been established in Virginia that the severance by deed of the minerals from the surface creates two separate and distinct estates. *See, Virginia Coal and Iron Co. v. Kelly*, 93 Va. 332, 24 S.E. 1020 (1896). In fact, there has apparently been no question that such partition was available in Virginia prior to the enactment of the 1964 amendment to the partition statute. For instance, in *Virginia Coal & Iron Co. v. Hylton*, 115 Va. 418, 79 S.E. 337 (1913), Virginia Coal and Iron Company sought to partition the coal and other minerals in and under a 700-acre tract in Wise County, Virginia. The question for decision before the Supreme Court of Virginia was whether Virginia Iron and Coal Company had title to the mineral estate, and the Court held that it did not. Significantly, neither the Court nor the parties questioned the fact that the partition of the mineral estate was procedurally available. While the basic question of whether partition of mineral estates can be compelled under Va. Code Ann. § 8-690 has never been presented to the Supreme Court of Virginia, other states which have considered the question have nearly unanimously reached the conclusion that minerals which are a part of the real estate may be the subject of partition if held in co-tenancy in conformity with principles applicable to the partition of real estate generally. See *Annot.* "Partition of Undivided Interest in Minerals in Place," 173 A.L.R. 854, Section 2 (1948).

The courts in West Virginia have been somewhat inconsistent in their treatment of their right to partition a mineral estate. For example, in *Hall v. Vernon*, 34 S.E. 764 (W. Va. 1899), and *Robertson Consolidated Land Co. v. Paull*, 59 S.E. 1085 (W. Va. 1907), the West Virginia Court of Appeals held that oil and gas in place was not partitionable in kind because of their fugitive nature and the uncertainty as to the quantity under any given area of surface. In *Robertson, supra*, the Court also held that there could be no partition in kind of rights to coal because of the uncertainty as to the quality and quantity of the coal beneath the surface.

However, in *Preston v. White*, 50 S.E. 236 (W. Va. 1905), the Court held that oil and gas rights might be partitioned by sale of the coal and division of the proceeds. Still later, in *Smith v. Greene*, 85 S.E. 537 (W. Va. 1915),

neither the Court nor the parties questioned the propriety of partitioning a mineral estate. The dispute, rather, was as to the method of partition. The plaintiff wanted to have the property sold and the proceeds divided while the defendants requested partition in kind. The Court held that partition in kind was proper under the facts of the case. Finally, in *Williams v. Victory Coal Co.*, 192 S.E. 329 (W. Va. 1937), which dealt with a suit for specific performance of an alleged agreement to partition mineral property, the Court of Appeals remanded the case with directions and suggested that if the agreement to partition was not established, the pleadings might be amended to obtain compulsory partition, noting that "the fact that the property involved a vein of coal is no deterrent to partition in kind. *Smith v. Greene, supra.*"

While it appears that the only case squarely facing the issue in West Virginia involved oil and gas in addition to coal and partition was denied, it also appears that the practice of judicially partitioning solid minerals in place has generally been acquiesced in both Virginia and West Virginia. Taking this attitude together with the fact that most of the jurisdictions have agreed that partition of the mineral estates is available under general partition statutes, it seems quite clear that partition of mineral estates was available under Va. Code Ann. § 8-690 prior to the 1964 and 1968 amendments.

The next question is that if partition of mineral estates was available prior to those amendments, what effect do the 1964 and 1965 amendments have as to mineral properties which lie west and north of the Clinch River. In resolving this issue, it should be noted that those amendments do not expressly deny the right of compulsory partition as to property north and west of the Clinch River but simply grant that right as to property east and south of the river. What we have here, then, is the construction of the statute which is declaratory of the common law, yet limited in its territorial application. In determining whether the 1968 amendment thus prohibits the right of compulsory partition as to property north and west of the Clinch River, it should be pointed out that as a general proposition, the common law in Virginia is not considered as altered or changed by statute unless the legislative intent is "plainly manifested." See *Norfolk and Western Ry. Co. v. Thomas*, 110 Va. 622, 66 S.E. 817 (1910).

As the Court pointed out in another case, *Keister v. Keister*, 123 Va. 157, 96 S.E. 315 (1919), "The legislature is presumed to have known and to have had the common law in mind in the enactment of the statute; and the statute will be construed to read as if the common law remained

unchanged (that is to say, the statute will be read along with the provision of the common law, and the latter will be read into the statutes), unless the purpose of the statute to change the common law appears from the express language of it or by necessary implication from such language." 123 Va. at 162. In other words, the Court said, if the statute is to change the common law, "it must . . . be done by words of no uncertain meaning; by language which must not be entirely consistent with the common law on the subject remaining unaltered." 123 Va. at 162.

By no stretch of imagination can it be said that the legislature, by inclusion of the 1964 and 1968 amendments to Va. Code Ann. § 8-690, plainly manifested an intent to change the common law. Stated another way, the fact that the legislature expressly made the right of compulsory partition available as to mineral estates east and south of the Clinch River shows no clear intent, nor can it be necessarily implied, that the common law rule as to such estates north and west of the Clinch River has been thus abrogated. There is no inconsistency between the pre-existing common law and the recent amendments. Rather, those amendments merely codify what was previously the law. I therefore conclude that partition of the mineral estate of the J. W. and Caroline Cole property is legally compellable.

Although it is unnecessary in this report to proceed further into this issue, the validity of the 1964 and 1968 amendments to § 8-690 under the Virginia Constitution should not go unmentioned. The attack on those amendments would be under Sections 63 and 64 of the Constitution which prohibit the enactment of local, special, or private laws. Section 64 contains the following provisions:

> In all cases enumerated in the last section and in every other case which, in its judgment, may be provided for by general laws, the General Assembly shall enact general laws. Any general laws shall be subject to amendment or appeal, but the amendment or partial repeal thereof shall not operate directly or indirectly to enact and shall not have the effect of the enactment of a special, private, or local law.

The standards for determining whether legislation is special or general was set forth in *Martin v. Commonwealth*, 126 Va. 603, 112 S.E. 77 (1920). The Court held that a law is special "in the constitutional sense when by force of an inherent limitation it arbitrarily separates some person, places, or things from those upon which, but for such separation, it

would operate." As to what is and what is not an arbitrary separation, the Court concluded:

> Constitutional prohibitions against special legislation do not prohibit classification. A general law in its simplest form embraces all persons and places within the state, but varying circumstances often render it impossible to apply the same rule everywhere and to everybody. But the classification must not be purely arbitrary. It must be natural and reasonable and appropriate to the occasion. There must be such difference in the situation of the subjects of the different classes as to reasonably justify some variety of rule in respect thereto. Though an act be general in form, if it be special in purpose and effect, it violates the spirit of the constitutional prohibition . . . . But the necessity for and reasonableness of classification are primarily questions for the legislature. If any state of facts can be reasonably conceived that would sustain it, that state of facts at the time the law was enacted must be assumed.

126 Va. at 612.

It is difficult to conceive any state of facts which would justify the classification of mineral properties north and west of the Clinch River differently from those mineral properties south and east of the Clinch River. It would thus seem that the classification in § 8-690, as amended, is arbitrary and constitutes special legislation and, as such, is invalid under Section 64 of the Virginia Constitution.

In summary, it is this Special Commissioner's conclusion that those mineral rights owned by the estate and which are located on Tract Nos. 2, 3, 5, 6, 7, 8, and 9 are compellable by partition.