## CIRCUIT COURT OF ROANOKE COUNTY

Linda Faye Blackwell Bell

    v.

Dennis Allen Bell

January 30, 2013

Case No. CL10-1312

By Judge Robert P. Doherty, Jr.

Husband and Wife separated almost seventeen years ago on April 17, 1995, when Wife left the marital residence and moved into another house titled in Husband's name. Wife then sued for a divorce. They had been married approximately twenty years when the suit was filed. Both sides accused the other of fault grounds. The case was initially assigned to a commissioner in chancery. Two years later, the commissioner was made judge *pro tem*. Little or nothing was done in the case, and it languished. Finally, after approximately fifteen years, a complete gap in activity took place, and the case was dismissed, as no order or proceeding had occurred for more than three years, pursuant to § 8.01-335(B), Code of Virginia (1950), as amended. It was not properly reinstated within one year as required by statute and stood permanently ended.

Shortly thereafter, on November 12, 2010, Wife again filed a suit for a divorce. On September 19, 2012, *ore tenus* evidence was presented for a "no fault" divorce, they having lived separate and apart for a period of more than one year, without interruption and without cohabitation, and with the intent to end their marriage, all pursuant to § 20-91(9)(a), Code of Virginia (1950), as amended. The Court indicated it was satisfied with the evidence and would grant the final divorce upon presentation of an order. None has been submitted. Based on admissions and correspondence in the earlier divorce case, the Court found that the parties had bound themselves as to which property was marital and which was separate. They then agreed that the only marital property remaining to be distributed were four parcels

of real estate, two that bordered the parcel containing the former marital residence where Husband continued to live and the one where Wife lived. All four of these parcels of land are titled solely in Husband's name.

Although Husband did not testify in this case, the Court does not accept the accuracy of all of Wife's testimony and the slant she gave to the facts as she alleged them, especially in relation to the factors contained in § 20-107.3(E), Code of Virginia (1950), as amended. Those are the factors the Court is required to consider when making equitable distribution of marital property and/or a monetary award. Some of her testimony was contradicted by other witnesses and by the actual facts as found by the Court. Some of her testimony was simply self-serving and not credible.

Husband and Wife were married for approximately twenty years prior to their final separation. Both had been married previously. Wife's two and one-half year old son from her prior marriage lived with them, and Husband helped support and raise the child. No children were born to their marriage. Both parties appeared to have devoted the majority of their free time, effort, and energy to their marriage, and to the raising of Wife's son. These are all nonmonetary contributions to the well-being of the family.

Initially, Husband worked as a dockworker for a local transport company. Wife became a full-time homemaker, doing some part-time daycare, and she devoted her full time to caring for her infant son. Early in their marriage, Husband opened a business selling liquor by the drink. He managed the bar, and Wife assisted as a bartender for approximately six months. During that time, the parties moved from their marital residence and lived in the basement of the bar. Shortly thereafter, they closed the bar, and both Husband and Wife obtained jobs. Wife worked at a local furniture store, and Husband worked for a local construction company. He was injured on the job, became permanently disabled, and continues to receive disability payments for that injury. After Husband's disability, Wife passed the civil service exam and was ultimately employed by the post office. She worked there until 1980, when fibromyalgia and migraine headaches caused her to become disabled. She also receives a monthly disability check. During the majority of this time, Husband, who cannot read or write, earned money buying and selling real estate and from rental income.

Throughout their marriage Wife was the one who managed the home, cleaned, prepared meals, and cared for her son. Husband did the outside chores, repaired, and kept the home and cars maintained, and remodeled their house. Husband and Wife both spent their earnings on living expenses and costs of the marriage and caring for Wife's son. When Husband was unable to work or earn money, Wife became the primary breadwinner of the family. Wife also received monthly payments from the sale of a farm she had inherited, getting an approximate $22,000.00 balloon payment in the early 1980s; shortly after, they bought their marital residence. She recalls giving one-half of that money to Husband, but does not remember

what either one did with their share. During this time, Husband received proceeds from the settlement of a personal injury action and bought more real estate.

After the separation of the parties in the spring of 1995, Husband was required to pay the real estate taxes and insurance on the residence titled solely in his name, in which Wife chose to live. Although not ordered to do so by the Court for the entire separation of the parties, Wife continues to keep Husband on her health insurance policy. That may well be the reason that the final divorce decree has not been submitted. Also, after the separation of the parties, Wife opened her own business, a consignment shop. Each party supported himself or herself from their individual disability payments and from the money they each earned in their separate business activities.

Both parties made allegations of fault in the breakup of their marriage, but allegations alone do not amount to the necessary corroborated proof. Consequently, the circumstances and factors that contributed to the dissolution of the marriage and the unproven allegations of fault grounds for divorce play almost no part in the decisions the Court makes concerning equitable distribution.

Wife was twenty-seven and Husband was thirty-one when they were married. Both were in good physical and mental health. Now, almost thirty-eight years later, both parties are physically disabled but still able to earn money: Wife by running her own business, and Husband by buying and selling real estate. Wife is approaching sixty-six years of age and Husband is sixty-nine. They both receive disability income and will shortly, if they have not already started, begin receiving social security income. Neither party presented evidence of any mental health problems.

Evidence was not presented as to the individual debts and liabilities of the parties except that Wife currently has a separate $5,000.00 business loan. Their seventeen-year separation may well be the reason that marital debts do not exist. There was almost no evidence as to the specifics of how their marital property was acquired. Their stipulation that the four parcels of real estate titled in Husband's name was acquired during marriage as a result of marital efforts and funds, and is consequently marital property, limits the Court's consideration of the details of its acquisition.

Based on the stipulation of the parties and the lack of evidence on their individual debts, assets, and liabilities, the Court finds that their marital real estate, which is their only marital property, is non-liquid in character. No debt exists on the marital real estate. It is held solely in Husband's name, free and clear.

Upon a division of the marital real estate by a monetary award, which may entail the sale of some of the land by Husband, capital gains taxes could be incurred. Because acquisition costs were not presented to the Court, the determination of the actual tax consequences to the parties is impossible. Having no idea of the individual assets of the parties, and

whether those assets are liquid or non-liquid, the Court is not even able to determine whether marital real estate must be sold to create funds for a monetary award.

The testimony of the witnesses for both sides in this case did not mention the use of marital property or the dissipation of marital funds for a non-marital separate purpose in anticipation of divorce or separation or after the last separation. They did, however, speak to a devaluation of the marital real estate in which Wife lives. It amounts to a form of waste and is clearly one of the other factors appropriate to be considered by the Court in order to arrive at a fair and equitable monetary award.

## Waste

"Generally, waste is defined as a destruction or material alteration or deterioration of the freehold, or of the improvements forming a material part thereof, by any person rightfully in possession, but who has not the fee title or the full estate." *Chosar Corp. v. Owens*, 235 Va. 660, 663, 370 S.E.2d 305 (1988), *quoting from Black's Law Dictionary*. Although marital property as defined by the equitable distribution statute gives Wife an interest in the value of the marital real estate, it does not give her an ownership interest in it. *See* § 20-107.3(B), Code of Virginia (1950), as amended. The residence Wife lived in for the past seventeen years is titled solely in Husband's name. He is its fee simple owner. At law, Wife had no legal interest in the real estate. She could have been evicted by Husband at any time. She simply moved in without objection by Husband. Her claim to the residence was one of possession only. She had a mere scintilla of interest in the home. Her relationship to the owner/landlord was personal only. There was no lease to Wife. Her interest could not be assigned at law. She was a tenant at will, rightfully in possession. Her tenancy was and is tenuous and at the pleasure of Husband. *Eason v. Rose*, 183 Va. 359, 365, 32 S.E.2d 66 (1944). Such a tenant can be held liable for waste. *Chosar Corp. v. Owens, supra; see also* § 55-211, Code of Virginia (1950), as amended, that makes any tenant in possession who commits waste liable to any party injured.

The type of waste being examined in connection with the premises where Wife resides is permissive waste. It is a form of waste caused by the failure to take reasonable care of the property. It is the kind of waste that is a matter of omission only. In this particular case, it is alleged to be the failure to protect the building and other improvements from the ravages of weather, water, insects, and time. *See Minor on Real Property* (2d ed., Ribble), vol. 1, sect. 418.

Contrary to Wife's testimony, the evidence accepted by the Court was that Husband hired several contractors who, in 1994, remodeled the entire residence where Wife now resides. They went through the whole house, both inside and outside, and repaired all defects. Wife's son and his wife lived

there after the remodeling was completed and were still there in April 1995 when Wife moved in. Thereafter, while in the house for seventeen years, Wife painted a portion of its interior one time and had the carpets cleaned one time. No other maintenance was done on the residence. Wife claimed the photographs she took and put into evidence showed the condition of the house when she moved into it, even though the photographs were taken in 1998. That evidence was directly contradicted by the contractors who remodeled the premises in 1994. One, by affidavit, testified that, when the remodeling job was complete in 1994, "the home was in virtually new condition." The other, after viewing the pictures taken by Wife, testified that those pictures did not depict the condition of the house when they finished their repairs and remodeling job. He said that they left the house in good shape. This would have been less than one year before Wife moved into the house.

Wife's expert appraiser, after viewing the premises in detail, described it as being very run down. He testified that a serious lack of maintenance had occurred over the years. On the exterior the rain gutters were filled with material and the siding was eroding away. He said the deteriorated state of the home affected its value, although he did not determine the value of the property if it had been maintained. He simply said that Wife had not maintained her home. Husband's expert appraiser found Wife's residence to be in fair or minus fair condition. In addition to the deterioration and damage noted by Wife's expert, Husband's expert said that the driveway was rutted and needed a loader to cut it out and a load of gravel; that there were termites or ants in the exterior siding of the house; that rotten wood existed in most of the areas depicted in the photographs; that rotten wood was on the access to the back door and on the deck; that the deck was pulled away from the steps; that the roof needed repair or replacement; that multiple broken light fixtures needed to be replaced; that serious water damage existed; that the garage door was inoperable and had rot in it; and that it was the third or fourth worst deteriorated house he had ever seen. He also testified that the house needed $26,000.00 in repairs to bring it back into good shape and that absolutely no preventive maintenance had been done on that residence for many years. The Court finds that Wife lived seventeen years in a house that was in good shape when she moved in and she simply allowed it to decay around her. Wife committed permissive waste.

In making its equitable distribution decisions in this case, the Court has considered all of the evidence presented and its application to each of the factors contained in § 20-107.3(E), *supra*, with special emphasis on those factors discussed herein. The Court carefully considered the arguments of counsel, both oral and written, and read the cases and authorities cited by them. The Court has also done independent legal research. Finally, the Court had the opportunity to observe the witnesses as they testified and to determine the weight to be given to their evidence.

## Marital Real Estate

The parties stipulated that there were four parcels of marital real estate all titled in Husband's name. (1) The 3.96 acre tract on Butternut Road, which is located in the Mason's Knob section of Roanoke County. That is where Wife resides in a two-story house. (2) The 58.7 acre tract on Fallwell Lane, also located in the Mason's Knob section of Roanoke County. That is where Husband's one story home is located. (3) The 4.4 acre tract adjoining the 58.7 acre tract, also located in the Mason's Knob section of Roanoke County. The tax ticket refers to it as being on Fallwell Lane. Wife's expert appraised these parcels of land separately. Husband's expert treated Husband's residential land as one parcel of 63.1 acres when appraised. (4) The fourth parcel is a .9 acre vacant lot in the Poage's Mill section of Roanoke County. It is described on the tax ticket as being located off Route 691 and on Dawnwood Road. It is taxed at a value of $700.00. No other evidence was presented as to its value. Notwithstanding that omission, Wife's expert made reference to a .9 acre parcel adjoining Husband's residential tract that gives road frontage. A review of the map shows that Husband's 63.1 acre tract fronting on Fallwell Lane is connected to the .9 acre parcel that fronts on Dawnwood Road. That combined parcel of land totals 64 acres.

When making his appraisal, Wife's expert used an erroneous quantity of land for the 58.7 acre tract where Husband's home is located. He determined that it contained 84.27 acres based on a tax map he found. He did not look at the deed to verify the quantity of land conveyed. He did not walk around the property to estimate its actual size. He did measure the exterior of Husband's house and found it to be larger than the county tax records showed. So he ignored the county's determination of the size of the house and used his own finding, but he used the county's tax map to determine the quantity of land, which is contrary to Husband's tax bill and contrary to the measurements in the deed. His appraisal did not appear to include the .9 acre tract fronting on Dawnwood Road. He appraised 25.27 more acres than existed in the 58.7 acre tract. For that reason, the Court chose not to accept his valuation of the parcels upon which Husband's home was located.

Husband's expert looked at the deeds, walked around the land where Husband's home is located, and verified that it contained 58.7 acres. He then combined that parcel with the adjoining 4.4 acre tract and appraised the entire residential parcel as a 63.1 acre tract. He noted that Husband's residence was in a high state of maintenance and in excellent condition. He determined its value as of the date of separation to be $215,000.00. He opined that its current value as determined by the comparable sales approach was $475,000.00, which valuation the Court finds to be correct. His valuation did not appear to include the .9 acre tract fronting on Dawnwood Road, which is appraised for tax purposes at $700.00.

Both experts found the 3.96 acre tract containing Wife's residence to be valued at $150,000.00. Wife's expert downplayed the deterioration of that residence in his appraisal. He did not determine that a large expenditure had to be made to bring the house up to the same good condition it had been in seventeen years ago. The difference between the appraisals was that Husband's expert appraised the property at its 1995 value of $118,000.00, when it was in good condition, and its current value of $150,000.00. He determined that it needed $26,000.00 spent on repairs to put it in the same shape it was proven to be in 1995. That was corroborated by the other evidence presented in this case. The deterioration of the residence as proven by the testimony of the contractors who worked on it in 1994 and by the photographs presented was more in line with that described by Husband's expert. Accordingly, the Court accepts the valuation by Husband's expert in the amount of $150,000.00 for the actual value of the Butternut Road residence. The Court also accepts that expert's opinion for the determination that lack of maintenance caused a $26,000.00 devaluation in Wife's residence. That is the amount of money necessary for the cost of repairs to correct the physical deterioration of the house and its concomitant reduction in value caused by Wife's neglect.

### Alternate Valuation Date

Husband had earlier requested that the Court use the date of separation, seventeen years ago, as the alternate valuation date. The Court did not do so because passive appreciation occurred to both the residential land lived on by Husband and the residence lived in by Wife. Although some of the increase in value on the parcel used by Husband was due to his actively maintaining the premises after the separation of the parties, that amount was not quantified. In addition, evidence was presented as to the dollar amount of the repairs necessary because of the devaluation of the property used by Wife resulting from her neglect. Using the current valuation date instead of the date of separation allowed the Court to consider all of the factors necessary to arrive at a fair and equitable monetary award. The current valuation date will be used.

### Monetary Award

The value of the marital property is: $150,000.00 for the Butternut Road property where Wife resides; $26,000.00 in devaluation of the Butternut Road property caused by Wife's waste; $475,000.00 for the combined 63.1 acre tract where Husband resides on Fallwell Lane; and $700.00 for the .9 acre lot fronting on Dawnwood Road. This all totals $651,700.00. The Court finds that each party should receive 50% of this value, or $325,850.00. The Court fixes that amount as the monetary award to be paid by Husband unto Wife. Wife's share will include the $26,000.00

devaluation of marital property caused by her permissive waste. The Court deems her to have already received that $26,000.00. Pursuant to § 20-107.3(D), Code of Virginia (1950), as amended, Husband, "[t]he party against whom a monetary award is made may satisfy the award . . . in part, by conveyance of property. . . ." in this case, the Butternut Road 3.96 acres in which Wife resides, directly to Wife within sixty days of the date of this letter opinion, provided a final decree of divorce has been entered. That transfer is with the approval of the Court. *See also Lowe v. Lowe*, 233 Va. 431, 434, 357 S.E.2d 31 (1987). The transfer will give Husband a credit of $150,000.00 payment on the monetary award. That will leave a balance due Wife of $149,850.00. The balance due on the monetary award, whatever it might be, will be reduced to judgment sixty days from the date of this letter opinion, provided a final divorce decree has been entered by that time. The requirement for the divorce to become final is because equitable distribution, and any monetary award in furtherance thereof, can only be ordered after a final divorce has been granted. Section 20-107.3(A), Code of Virginia (1950), as amended.

Counsel for Husband should prepare an appropriate equitable distribution order that also incorporates this letter opinion by reference and present it for entry after first obtaining endorsement of counsel.